## Frazier & Foster v. Danner.

(Decided January 4, 1912.)

### Appeal from Carter Circuit Court.

1. Master and Servant—Personal Injury—Excavation—Assumed Risk—Question for Jury.—An inexperienced servant employed to undermine and remove earth from the side of a hill, does not assume the risk of injury from a fall of earth occasioned by its having been loosened by means of dynamite, unless he knew of this fact or the dangerous condition of the earth was so obvious and patent that a person of ordinary prudence situated as he was would have known it. Whether or not such condition existed held to be a question for the jury.

2. Same—Negligence—Failure to Warn.—A master who assigns an inexperienced servant to the work of undermining and removing earth from the side of a hill is guilty of negligence if he fails to warn the servant of the fact that the earth had been previously loosened by means of dynamite, unless the servant knew of this fact and of the danger incident thereto, or the dangerous condition of the earth was so obvious and patent that a person of ordinary prudence situated as he was would have known it.

3. Depositions—Exceptions—Amended Certificate—Section 587, Civil Code.—Where exceptions to a notary's certificate attached to a deposition are sustained, and pursuant to leave given the certificate is amended, it is necessary for the party opposing the introduction of the deposition, to file exceptions to the amended certificate, or give notice that he will insist on his original exceptions, within the time prescribed by section 587, Civil Code; otherwise such exceptions will not be considered.

THEOBALD & THEOBALD for appellants.

ARMSTRONG & WOLFFORD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Frank Danner, brought this action against defendants, Frazier & Foster, to recover damages for personal injuries alleged to have been caused by their negligence. To reverse a judgment in his favor for $2,-000 the defendants appeal.

In the month of February, 1908, defendants were operating a rock crusher in Carter County. The rock to be crushed was obtained from a quarry nearby, which was situated on the side of a hill. The rock was overlaid with earth from six to twenty feet deep. To reach the rock it was necessary to remove the earth. The method adopted was first to shoot up and loosen the earth with powder and dynamite, and then undermine it, and push or pull it down. At the time he was injured, plaintiff was engaged in the work of undermining. He was about twenty-five years of age, and had had no previous ex-perience in such work. He had been at work only two and a half days when the accident occurred. At that time quite a quantity of the earth had been removed. The cleared places consisted of two benches, one about three feet above the other, each above six feet wide and several feet in length. Below was a cliff sixty-five or seventy feet in height. Plaintiff was at work on the upper bench. Ac-cording to his evidence there was no outlet from this bench by which one could avoid being struck by falling earth. The only way of escape was by the lower bench from which there was an outlet at one end only. While engaged in the work of undermining as directed by his foreman, from two to four tons of earth and loose rock suddenly slipped towards him, whereupon he jumped to the bench or ledge below, and seeing that he had lost his balance and would fall below anyhow, he jumped over the cliff. His hip and both arms were broken, and he was otherwise severly cut, bruised and injured. Plaintiff testified that he was not notified that the earth had been shot up and loosened, and was not warned of the danger therefrom; that he did not know that such was the fact, nor was there anything in the appearance of the earth that would indicate that such a condition existed.

A former foreman in the employ of defendants testi-fied that the usual and proper way of removing the earth under such conditions was to loosen it with dynamite, and then move it with shovels from the top; then it can be undermined with safety. This evidence was corrobo-rated by that of another witness.

The evidence for the defendants as testified to by one

of them and elicited from plantiff's witnesses on cross-examination, was to the effect that the only way to remove earth as hard as that upon the hill on which plaintiff was at work, was to loosen it with dynamite. When this has been done, the surface is disturbed, and any one can tell that the ground has been shot, because you can esaily stick a pick into it. Plaintiff could have avoided the slide by stepping to one side, as there was plenty of room for that purpose. Plaintiff knew that the dirt was constantly falling, and that the face of the hill was changing all the time. He also knew that the earth was frozen and had begun to thaw before he went to work. He was digging a trench under the earth at the time it came down. He had been in the habit of digging a trench under the earth, and then getting behind it and shoving it down with a bar, but on the occasion in question, the earth came down without any shoving.

Plaintiff predicated his right to recover on three grounds. First, failure to furnish a seasonably safe place in which to work; second, failure to employ competent servants; third, failure to instruct him as to his duties and to warn him as to the dangers incident to the loosening of the earth with dynamite. The case was submitted only upon the first and third theories, and numerous instructions covering these theories and bearing upon the further questions of assumed risks and contributory negligence were given.

In his original petition, plaintiff relied upon the first two grounds of negligence. Subsequently he filed an amended petition, charging that his injuries were caused by the negligence of defendants in failing to instruct him in his duties and in failing to warn him of the danger. In filing his amended petition and alleging a third ground of negligence, plaintiff did not abandon the other grounds relied upon.

But it is insisted that the rule making the master liable for his failure to use ordinary care to furnish his servant a reasonably safe place in which to work, considering the character of the employment, can not be invoked in this case, because plaintiff was himself engaged in making the place unsafe, and therefore assumed the risk of being injured. There might be some merit in this contention, if plaintiff had been injured by a fall of earth caused by his work of undermining. In such a case the law would impose upon him the duty of keeping out of the way of the earth which he himself was causing to

fall. But that is not this case. The evidence leaves no doubt that the falling of the earth in such a large quantity was due to the fact that it had been shot up and loosed by dynamite. Plaintiff had had no previous experience in such work, and had been at work only two days and a half. It is not pretended that he was informed that the earth had been loosened by means of dynamite, or that he was warned of the increased hazard resulting therefrom. It is only claimed that the surface of the earth was disturbed and that any one could tell this by sticking a pick in it. The rule is that a servant assumes all those risks ordinarily and usually incident to the business in which he is engaged, and those risks of which he knows, or which are so obvious and patent as to import knowledge to a person of ordinary prudence similarly situated (Kentucky Freestone Co., v. McGee, 118 Ky., 306). Inspection not being in the line of plaintiff's duty, the law did not impose upon him the obligation of examining the earth to ascertain its dangerous condition. True he was bound to use his eyes and take notice of those dangerous conditions which ordinary observation would disclose, but we can not say as a matter of law that the condition of the earth was such as to charge him with notice of the increased danger resulting from such condition, and that he therefore assumed the risk. The question was for the jury.

We also conclude that the court properly submitted the case on the theory of a failure to warn. There can be no doubt that the danger to plaintiff was increased by reason of the fact that the earth had been loosened by dynamite, and if the dangerous condition of the earth was not known to plaintiff, and was not so obvious and patent that a person of ordinary prudence situated as he was would have known it, then it was the duty of defendants to warn him of such danger. This phase of the case was submitted to the jury by an instruction even more favorable than defendants were entitled to, for the instruction given precluded a recovery in the event plaintiff knew or by the exercise of ordinary care could have known of such dangerous condition of earth, thus imposing upon plaintiff the duty of using reasonable diligence to discover what ordinary observation would not disclose.

While the instructions may be subject to criticism in certain respects, we fail to find in them any error prejudicial to the substantial rights of appellants. Thus in the instruction defining plaintiff's right to choose be-

tween two dangers in the event he was placed in a position of peril by the negligence of defendants, it is insisted that the court should have used the words, "imminent peril," instead of "peril." While the instruction might have been more accurate, had this been done, yet as all the evidence goes to show that plaintiff's position was one of great and immediate danger, the omission of the word, "imminent" could not have misled the jury.

It is insisted that the court erred in permitting the deposition of M. W. Garnes to be read to the jury. This deposition was taken on February 23, 1909. On the following day it was filed with the Clerk of the Carter Circuit Court. On March 4, 1909, exceptions were filed. The exceptions as to the sufficiency of the certificate were sustained, and leave given the notary to amend. At the same time, leave was given the defendants to cross-examine the witness. This order was entered on September 27, 1909. The amended certificate of the notary was filed December 7, 1909. The defendants never availed themselves of the privilege of cross-examination. They never filed any exceptions to the amended certificate, nor did they give notice that the original exceptions would be insisted on until the October term, 1910, when the case was called for trial, which was about nine months after the amended certificate was filed. While exceptions to the competency of a witness, or to the competency or relevancy of the testimony may be made before or during the trial, no other exception can be regarded unless it be filed and noted on the record before the commencement of the trial and before or during the first term of the court after the filing of the deposition. (Civil Code, Sec. 587). The purpose of this section is to prevent the party taking the deposition from being deprived of the benefit of the testimony by mere formal defects such as an insufficient certificate and the like, by bringing to his notice the defects complained of in time to enable him to correct them, if possible, before entering into the trial. That being true, we conclude that the section should be liberally construed in order to effectuate the purpose desired. We are therefore of the opinion that the defendants in order to avail themselves of any defects in the amended certificate, should have filed exceptions thereto, or indicated their purpose to rely upon their original exceptions, before or during the first term of the court occurring after the filing of the amended certificate. Having failed to do

this, the court properly permitted the deposition to be read.

But it is earnestly argued that even if it was proper to permit the deposition to be read, that portion of it relating to the proper method of doing the work should have been excluded because no such issue was made by the pleadings. This evidence, we think, was competent and relevant because it had a direct bearing on the question whether or not the risk of injury from the earth that had been loosened by means of dynamite was one of the risks ordinarily and usually incident to the employment in which he was engaged.

Judgment affirmed.