# CHARLESTON.

SPRINKLE, ADMR. *v.* BIG SANDY COAL & COKE CO.

Submitted February 6, 1912.   Decided April 29, 1913.

1. MASTER AND SERVANT—*Duty to Instruct and Warn—Actionable Negligence.*

    It is actionable negligence to employ a minor and place him to work at a dangerous employment, without instructing him as to the dangers and how to avoid them.   (p. 361).

2. SAME—*Minors—Appreciation of Danger—Presumption.*

    A minor, over 14 years of age, is presumed to have sufficient capacity to appreciate the ordinary dangers attending his employment.   But the presumption may be rebutted by proof of want of capacity.   (p. 362).

3. EVIDENCE—*Opinion Evidence—Injury to Minor.*

    Opinions of non-expert witnesses, based upon frequent observations of, and conversations with, a person, extending over a period of several months, are admissible to prove want of capacity.   (p. 362).

4. MASTER AND SERVANT—*Mine Boss—Agent of Master.*

    A mine boss, authorized by the mine operator to employ men and assign them to working places, is, *pro tanto*, the agent of such operator.   (p. 363).

5. SAME—*Injury to Minor—Actionable Negligence.*

    A coal mining company, by permitting its mining boss to employ men repeatedly and assign them to places of work, thereby makes him' its agent for that purpose; and if such agent employs an infant, who does not appreciate the dangers of his employment, and fails to instruct him concerning the dangers and how to avoid them, it is negligence for which the company is liable.   (p. 363).

6.   SAME—*Minor Employe—Duty of Master—Actionable Negli-gence.*

   To see that an infant servant has sufficient capacity to understand the dangers of his employment, and to properly instruct him in regard thereto, is the master's non-assignable duty, the failure to perform which constitutes negligence for which the master is liable.   (p. 364).

Error to Circuit Court, McDowell County.

Action by E. T. Sprinkle, Sheriff, etc., against the Big Sandy Coal & Coke Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother & Hughes* and *Stokes & Sale,* for plaintiff in error.

*Strother, Taylor & Taylor* and *Ritz & Ritz,* for defendant in error.

WILLIAMS, JUDGE:

Action by the administrator of Alexander Turner, deceased, to recover damages for his unlawful death, alleged to have been caused by the negligence of defendant.   Verdict and judgment for plaintiff for $10,000, and defendant obtained this writ of error.

Deceased, a boy fifteen years old, was employed, with his father's knowledge and consent, as trapper in defendant's coal mine in one of the side entries in which the cars were drawn by mules. His father also worked in the same mine.   Shortly before the fatal accident the father made a trip to Virginia and left his boy in charge of Mr. Abe Short, the mine boss, who, the father testifies, promised to take as good care of him as he would of his own boy.   While the father was away the boy quit work for three or four days.   When he returned to resume work, Abe Short was away attending court, and A. C. Williams, assistant mine boss, was filling his place.   Williams thought the boy had quit work, and had employed another boy to trap at the place where deceased had been trapping, but he needed a trapper in the main entrance and employed the boy, and put him to work there.   He had been at work only about three hours until he was killed.   The

cars are operated in the main entry with electric motors. No one saw just how the boy was killed. Mr. Williams was on the motor to which were attached seventeen loaded cars, and testifies that he saw the boy holding the door open and standing in a stooping position.

It was not known that he was killed until the motorman discovered, by the action of his motor, that something had gone wrong with his train. He stopped, went back to make an examination, and found that two cars were off the track, and that deceased's body was under one of them. There is evidence tending to prove that his body had been dragged from near the door to a point about 180 or 200 feet from it. When the train was stopped, the hindmost car was 150 or 160 feet from the door, and the car off the track nearest to the door was about 180 feet from it. The first appearance, near the track, indicating that a car had left it, was about 150 feet from the door. It thus appears that the trip had gone some 20 or 30 feet after the first car had left the track. It also appears that the boy was not killed by an electric shock, because the wire was on the opposite side of the cars from him. His sweater and shirt were found pulled off his body and turned inside out. Whether he was killed at the door, and his body thereafter dragged until it got under the car causing its derailment; or his clothing caught on some part of the car, and he was dragged and killed by the derailment of the car, does not appear. The evidence, however, is sufficient to warrant the jury in concluding that he met his death in one or the other of those ways.

That the work of trapping where the boy was killed, was more dangerous than in the side entry where he had previously trapped is also proven. The space between the cars and the wall of coal, in the main entry, was much narrower. A witness who measured it testifies that it was only 22 inches from the rail to the wall, and that the body of the car including the brake, extended beyond the rail 12 or 13 inches. It also appears that the brake, on the side of the cars where the boy had to be to perform his work, extended beyond the body of the car 3 or 4 inches. The trip of cars was of greater length, and therefore more danger of a car leaving the track than there was in the side entry. The boy's father testifies that he trapped at the place where the fatal accident occurred, for half a day, when the regular trapper was away, and found it to be a dangerous place. He says there was not

room to stand with safety, and hold the door open while the trip was passing, and that, on the approach of the motor, he would prop the door open and then take refuge in a recess in the wall, about 100 feet away. Mr. Williams testifies that most other trappers who had worked there would do the same thing. But, he says, that some of them "were pretty reckless didn't care if they stayed at the door, and I suppose this boy had seen them in going to his work, and he just done as they did."

Defendant offered no evidence and submitted its case upon a demurrer to plaintiff's evidence.

Three facts are averred in the declaration as constituting actionable negligence: (1) that defendant failed to furnish plaintiff's intestate a reasonably safe place in which to work; (2) that it negligently took him from the place where his father had consented that he should work, and put him to work at a more dangerous place; (3) that he was only fifteen years old, and possessed less capacity than boys of that age ordinarily possess, and was put to work at a dangerous employment, without being instructed as to how to avoid the dangers incident thereto.

As to the first, the statute, sec. 11, ch. 15H, Code 1906, makes it the duty of the mine boss to "keep a careful watch over the ventilating apparatus and the airways, *traveling ways,*" etc. It was his duty to see that the entry was made of proper width for the safety of the mines. Recent decisions of this Court, construing that statute, settle the question that the operator is not liable for injuries resulting from the failure of the mine boss to perform duties required of him by the statute. *Williams* v. *Thacker Coal & Coke Co.,* 44 W. Va. 599; *Squilache* v. *Coal & Coke Co.,* 64 W. Va. 337; *Bralley, Admr.* v. *Tidewater Coal & Coke Co.,* 66 W. Va. 278; *Davis* v. *Mabscott Coal & Coke Co.,* 69 W. Va. 741; and *Helliel* v. *Piney Coal & Coke Co.,* 70 W. Va. 45.

The second and third counts are sufficient, and may be considered together. The law makes it the duty of the master to warn his infant servant of the dangers attending his employment, and to instruct him how to avoid them, unless he already fully understands them; or, unless they are so simple and obvious that it can be fairly presumed that one of his age, possessing ordinary capacity, fully appreciated them. *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726; *Shaw* v. *Hazel-Atlas Co.,* 70 W. Va. 676.

Deceased had never trapped in the main entry before, nor is

there any evidence that he was told that it was narrower and more dangerous than the side entry in which he had trapped. It is not proven that the dangers of the place were explained to him in such a way as to enable him to comprehend them. He was simply told to keep out of the way of the trip. Mr. Williams says, "I cautioned him to keep in the clear as much as possible of the trip." Perhaps he thought the boy had had experience as a trapper, and knew how to keep out of danger. But he was confronted with new and greater dangers than he had been accustomed to. It does not follow that, because he had had experience in trapping at another place, he fully appreciated all the dangers of the new place.

Counsel for defendant insist, however, that it is proven, by the father's own testimony, that the boy was fully informed of the dangers of trapping in the main entry. Instructions are for the purpose of information; and, if he was already fully advised and cautioned, further instructions were not necessary. He would then be regarded as having assumed the risk, for the doctrine of assumption of risk applies as well to an infant as to an adult. It is only necessary that he should appreciate the danger in order to apply the rule. 1 Labatt on Master and Servant, sec. 391. True, the father does testify that he told his boy that it was dangerous in the main entry, and told him not to work there. But he does not say that he explained to him why, or in what particular, it was dangerous; or that he showed him how to avoid the dangers. Simply telling him that it was dangerous is not enough. It required instruction, explanation. He does say that he showed him how to keep away from the wires, in going in and out, but the wires were not the proximate cause of his death. He also says that they wanted his boy to trap in the main entry and he would not consent to it; that he trapped there for a half day himself, and learned that it was dangerous.

Being over the age of fourteen years, it is presumed that deceased had sufficient capacity to comprehend, and did comprehend, all the ordinary risks attendant upon his employment. *Wilkinson* v. *Coal Co.,* 64 W. Va. 93; and *Ewing* v. *Lanark Fuel Co., supra.* This presumption may be rebutted by proof that he did not, in fact, have the capacity ordinarily possessed by boys of his age, to understand and avoid dangers. Two or three witnesses who had known the boy intimately for eight or nine

months, testify that, in their opinions, he had less capacity than was ordinarily possessed by boys of his age. One of them says: "He seemed to be awful slow in understanding anything you would tell him." Their opinions were based upon observations of, and conversations with, the boy, extending over a period of several months. Some of them saw him nearly every day during that time. That furnished a sufficient basis on which to rest their opinions. His capacity was a matter of which ordinary witnesses could judge. It was not a matter calling for expert testimony. Opinions of ordinary witnesses, based upon acquaintance and observation, are admissible, and the jury were the judges of its value. *Freeman* v. *Freeman,* 71 W. Va. 303, 76 S. E 657; *Laplante* v. *Warren Cotton Mills,* (Mass.) 43 N. E. 294; *Keyser* v. *Chicago &c. Ry. Co.,* (Mich.) 33 N. W. 868

The jury were justified in believing, from the testimony in the case, that deceased possessed less capacity than boys of his age, generally, have.

It is insisted by counsel for defendant that it is not liable, because, they say, it is not proven that Williams had authority to employ the boy. That he was employed, and put to work in the main entry by A. C. Williams, assistant mine boss, is fully proven. If Williams had authority to employ servants and assign them work in the mine, defendant is liable, if such act is negligence, for he did not act as statutory mine boss in so doing, but was performing a duty of the master. It is not proven by direct evidence that he did have such authority. But it may be inferred from facts proven. *Ewing* v. *Lanark Fuel Co., supra; Union Pacific Ry. Co.* v. *Fort,* 17 Wal. 553. Being a corporation, defendant was obliged to carry on its operations through agents. It is not to be supposed that a directors' meeting was necessary to employ men and assign them work. Some individual must have been invested with that power. It is proven that Mr. Short, the mine boss, had employed both the boy and his father, and had promised the father to let the boy work at a particular place and not elsewhere; that Mr. Short was not about when the boy returned to the mine after being off three or four days, and that A. C. Williams, assistant mine boss, was then in charge of the mine; that he employed deceased and assigned him to trap in the main entry; and that he had, prior thereto, employed another boy to trap where deceased had been

trapping. In view of these uncontroverted facts, the jury could properly infer that Williams was the agent of defendant, and acted for it in employing deceased and assigning him a place to work. Like the duty to furnish reasonably safe appliances, it is the master's non-assignable duty, especially to his infant servants, to instruct them in regard to the dangers incident to their employment.

If Williams failed to perform that duty, and the jury were satisfied by the evidence that such failure was the proximate cause of the boy's death, then defendant is liable.

Contributory negligence is a defense, and must be proved by defendant, if it does not appear from facts and circumstances proven by plaintiff. Defendant offered no proof, and the jury certainly had a right to conclude that deceased was not guilty of negligence.

The instructions, given at the request of plaintiff, are consistent with the law as herein expressed; and it was not error to refuse defendant's instructions which the court did refuse. We think the instructions given fairly presented the law of the case to the jury, and deem it unnecessary to discuss them *seriatim*.

The judgment is affirmed.

*Affirmed.*