## Lack Singletree Company v. Cherry.

(Decided November 18, 1915.)

### Appeal from McCracken Circuit Court.

1.  Master and Servant—Assumption of Risk.—If the danger of the risk connected with the work of the servant is such that a prudent man would have refused to do the work under the circumstances because of the danger, then the servant will act at his peril in undertaking it; but, where the probability of injury is such that the minds and judgments of prudent men might well differ upon the certainty of its happening, or with regard to whether the force or appliances are reasonably safe or adequate to the performance of the work, and where the master insists, after objection, that the servant proceed with the work, or assures him that the force is adequate or the machinery safe, then the servant has the right to rely upon the master's pre-

sumed superior knowledge, the risk being thereby assumed entirely by the master.

2. Master and Servant—Assumption of Risk—What Contract Implies.—The servant does not undertake the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery; his contract implies that with regard to these matters his employer shall make adequate provision that no danger shall ensue to him.

3. Master and Servant—Assumption of Risk.—There are certain risks which the laborer assumes as an incident of his employment, one of them being the ordinary negligence of his fellow servants. There are, however, certain duties which the master owes to his servant, which are primary and personal in their nature, and which he may not delegate to another so as to escape liability for their non-performance; one of these non-delegable duties being his duty to his servants, to furnish them a reasonably safe place in which to do their work, and to furnish them competent assistants; and, where the master imposes upon one of his servants the duty of representing him in providing these means, the servant's acts are deemed to be those of the master, and for a simple neglect by such servant the master is responsible as though he acted in person.

BERRY & GRASSHAM for appellant.

HENDRICK & NICHOLS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—
Affirming.

The appellant operates a factory in which it makes singletree clips. George Koerner worked as a moulder for the appellant, and the appellee, W. W. Cherry, was his "shifter" or assistant.

Koerner's duties required him to carry the molten metal from the place where it was melted, and pour it into moulds; and, it was Cherry's duty to shift the moulds from one place to another, after they were filled with the molten metal, as the necessities of the work required.

The petition alleges that Koerner was so incompetent and negligent by reason of his clumsiness and defective eyesight, that he negligently struck a ladle he was carrying, filled with molten metal, against a plank and spilled the metal upon Cherry's foot, burning it to the bone, and seriously and permanently injuring him.

Cherry recovered a verdict and judgment for $1,000.00, and the defendant appeals.

After charging Koerner with the delinquencies and negligence above stated, the petition admits that the plaintiff knew these delinquencies before he was injured; and, it further alleges that he went to appellant's foreman upon two occasions and complained to him of Koerner's lack of sight; of his awkwardness and clumsiness; of his incompetency to perform the services required of him; and, that it was dangerous for appellee to work with or near Koerner. The petition further alleges that the foreman assured Cherry that Koerner was a competent and experienced man, and capable of performing his duties as a moulder; that there was no danger in Cherry's working in conjunction with him for a short while, and until the foreman could place him elsewhere; that Cherry relied upon the superior knowledge and judgment of the foreman, and upon the assurance above stated; and that one of said assurances was made to appellee three or four days before the accident, while the second was made only a day or two before the accident.

Appellant insists that the petition does not state a cause of action, and that its demurrer thereto should have been sustained, because it admits that appellee knew of Koerner's infirmities and incompetency, and that his knowledge in these respects being equal to the knowledge of the master, Cherry could not recover under the rule laid down in Bogenschutz v. Smith, 84 Ky., 330. Appellant relies upon the authority of that case for a reversal.

While it must be admitted that Bogenschutz v. Smith, *supra,* sustains appellant's contention, in a large measure, it should not be forgotten that the doctrine there announced upon this subject has been somewhat departed from by this court, if not entirely repudiated.

In the late case of the East Tennessee Telephone Co. v. Jeffries, 153 Ky., 136, we said:

"It is evident from the language of the instructions referred to, that the trial court was of opinion that the facts of the instant case brought it within the rule announced in Bogenschutz v. Smith, 84 Ky., 330, which in effect holds, that if the information of the master and servant with respect to the place of work or tools with which to perform the work, are equal, and if both are either without fault or in equal fault, the servant cannot recover damages of the master. This rule was

first declared in England and later followed in many of the American states, but it has in this State been so modified in cases decided since that of Bogenschutz v. Smith, as to have been practically disaffirmed. Pfisterer v. J. H. Peter & Co., 117 Ky., 501; L. & N. R. R. Co. v. Foley, 94 Ky., 224; Olive Hill Fire Brick Co. v. Ash, 146 Ky., 253; Fraser & Foster v. Danner, 146 Ky., 76; Ky. Free Stone Co. v. McGee, 118 Ky., 306; Angel v. Jellico Coal Mining Co., 115 Ky., 728; Ohio Valley Ry. Co. v. McKinley, 17 R., 1028; Int. Coal Co. v. Fannon, 145 Ky., 198.''

The law upon this subject was tersely stated in Bell-Coggeshall Co. v. Lewis, 28 Ky. L. R., 149, 89 S. W., 135, as follows:

''The instructions given by the trial court aptly presented the law governing the case. They, in substance, informed the jury that if they believed from the evidence the assistant furnished appellee by appellant was competent to perform the duties assigned him, they should find for appellant; upon the other hand if they believed from the evidence that the assistant was incompetent to perform the duties and appellee was injured by reason of the incompetence of such assistant, and that before being injured he complained to appellant's superintendent of the incompetence of the assistant and was assured by the superintendent of his competency, and relying upon such assurance appellee accepted the services of the assistant, it was the duty of the jury to find for appellee, unless they further believed from the evidence that the danger of his continuing work with the incompetent assistant was so obvious that an ordinarily prudent man would not have continued to work as appellee did, even though such assurance was given.

''The jury were also advised that if they believed from the evidence that though appellee's assistant was incompetent and still he continued to work without complaint on his part and without assurance on the part of his employer or superintendent of the competency of such assistant, or if they believed from the evidence that though such assurance was given appellee did not rely upon it, they should find for appellant.''

The modern doctrine may, therefore, be said to be, that if a servant believes another servant to be incompetent, and he complains of the fact to the master; and the master assures the servant that there is no

danger, and the servant, relying upon this assurance, continues in his work, and is injured by reason of the incompetency of the other servant, the master is liable unless the danger of continuing in the work with the incompetent assistant was so obvious that an ordinarily prudent person would not have continued to work, as appellee did, even though such assurance was given; and a petition showing such a state of facts is sufficient, although it fails to contain the allegation negativing the plaintiff's knowledge of the defective place, as was held in Bogenschutz v. Smith, *supra.*

It was the duty of the appellant to use ordinary care to employ a competent moulder, and if it failed to do so,. and assured appellee it would replace him by a competent workman, appellee had the right to rely upon this assurance.

The petition fully complies with the modern rule as above laid down, and the demurrer thereto was properly overruled.

The proof shows that Koerner was blind in one eye, and could see very indifferently with his other eye; that he was quite awkward and clumsy in his movements; and, appellant insists that since Cherry had worked with Koerner for about six months before the accident, he necessarily knew his delinquencies and defects as a workman, and consequently assumed that risk.

We think this point is sufficiently answered by the following language taken from the opinion of this court in I. C. R. R. Co. v. Langan, 116 Ky., 321:

"Appellant's next point is that appellee was aware of the danger in his employment resulting in his injury at the time he undertook it, and that his continuing in this employment, with knowledge of the inadequate force, was equivalent to his own assumption of the danger incident to the task. This would be true if the danger was such an obvious one as that the injury was reasonably certain to result, so that none but a reckless man would have undertaken it under the circumstances. We understand the rule on this subject to be that if the danger or risk is such that a prudent man would have refused to do the work under the circumstances because of the danger, then the servant will act at his peril in undertaking it. But where the probability of injury is such that the minds and judgments of prudent men might well differ upon the certainty of its happening or with regard

to whether the force or appliances are reasonably safe or adequate to the performance of the task, and where the master insists, after objection, that the servant proceed with the work, or assures him that the force is adequate or the machinery safe, then the servant has a right to rely upon the master's presumed superior knowledge. The risk is thereby assumed entirely by the master, and he impliedly assures the servant, who relies upon his statement, or who obeys his positive direction, that if he, the master, is in error as to the safety, he would indemnify the obedient servant against . the consequences. Shearman & Red. Neg., 126; Clark v. Holmes, 7 Hurl. & N., 937; Snow v. Housatonic R. R., 8 Allen, 450, 85 Am. Dec., 720; Conroy v. Vulcan Iron Works, 62 Mo., 39.''

The opinion in that case also quoted from the case of N. P. R. R. Co. v. Herbert, 116 U. S., 642, where the Supreme Court of the United States said:

''The servant does not undertake the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery. His contract implies that in regard to these matters his employers shall make adequate provision that no danger shall ensue to him.''

See. also Lasch v. Stratton, 101 Ky., 672; Shanks v. Citizens General Electric Co., 25 Ky. L. R., 811, 76 S. W., 379; L. & N. R. R. Co. v. Mahan, 113 S. W., 886.

Finally, appellant insists that the trial court erred in refusing to give instruction ''M'' offered by appellant, upon the law of fellow-servants. Considered as an abstract proposition of law, appellee does not question the soundness of the instruction, but denies its applicability to this case. The recovery was sought in this action because of the master's failure to select a competent servant to work with the appellee, and further because the master assured appellee that the incompetent servant was competent.

We think the contention of appellant is well answered by the following excerpt taken from the opinion of this court in the Langan case, above referred to:

''There are certain risks which a laborer assumes as an incident of his employment. Among these is that of the ordinary negligence of his fellow-servants. Although each servant in the common employment is a representative of the master to the extent that he is acting within the scope of his duties, yet for many kinds of ordinary neglect towards his fellow-servants the master may not

be liable for resulting injuries. However, there are certain duties which the master owes to his servants that are primary and personal in their nature, and which he may not delegate to another so as to escape liability for their non-performance. Among these he owes to his servants to furnish them a reasonably safe place in which to do their work, and must furnish them reasonably safe tools and appliances with which to do it. Alongside of these he must furnish them adequate assistance, or a sufficient number of workmen. So where the master assigns or imposes upon one of his servants the duty of representing him in providing these means, the servant's acts are deemed to be those of the master, and for a simple neglect by such servant the master is responsible as though he acted in person."

The doctrine of fellow-servant had no application under the facts of this case, and the court properly refused to give the instruction asked.

Judgment affirmed.