# CHARLESTON.

## BURTON v. WAR EAGLE COAL COMPANY.

Submitted November 30, 1915.   Decided December 7, 1915.

1. MASTER AND SERVANT—*Assumption of Risk—Miner.*

    Where an adult miner, skilled and intelligent, sees, understands and appreciates that the place in which he is requested to work by another servant is dangerous and unsafe and that what he is requested to do will render the place continually more dangerous, if he elects to continue at work in such place he assumes all risk of personal injuries resulting therefrom and thereby negligently contributes to his injuries, precluding recovery therefor against the owner of the mine. (p. 320.)

2. SAME—*Injury to Miner—Contributory Negligence—Assumption of Risk—Excuse.*

    Nor will the promise of the owner, or of an unauthorized agent or co-worker, to furnish props in a reasonable time, or to make or assist in making the place safe, excuse his negligence in remaining and working in such dangerous place, and give him right of action against the owner for consequential personal injuries. (p. 320).

    (LYNCH, JUDGE, absent.)

Error to Circuit Court, Mingo County.

Action by Samuel Burton against the War Eagle Coal Company. From judgment for plaintiff, defendant brings error.

*Reversed and entered here.*

*Anderson, Strother, Hughes & Curd* and *Sheppard, Goodykoontz & Scherr,* for plaintiff in error.

*Wiles & Bias,* for defendant in error.

MILLER, JUDGE:

Action for personal injuries sustained by plaintiff from falling slate while employed in defendant's coal mine.

After plaintiff rested and defendant had also put in its evidence it demurred to plaintiff's evidence, and the jury rendered a conditional verdict in favor of plaintiff for seven thousand dollars.

From the judgment below on the demurrer to the evidence, in favor of plaintiff, and that he recover of defendant the sum so found by the jury with interest and costs, defendant sued out this writ of error.

The declaration, we think, good on demurrer, and that we need not further respond to the points of error made in relation thereto.

Section 24, chapter 15H, serial section 483, Code 1913, makes it one of the statutory duties of the mine foreman, and, as construed by this court, a fellow servant of those employed in the mine, to see to it "that all loose coal, slate and rock over head in the working places and along the haul ways be removed or carefully secured so as to prevent danger to persons employed in such mines; and that sufficient props, caps and timbers, as nearly as possible of suitable dimensions, are furnished for the places where they are to be used, and such props, caps and timbers shall be delivered and placed at such points as the rules for the government of each respective mine provide for them to be delivered; and every workman in want of props, cap pieces and timbers shall notify the mine foreman, or such other person who may be designated for that purpose, at least one day in advance giving the length and number of props or timbers and cap pieces he requires; but in case of an emergency the timbers may be ordered im-

mediately upon the discovery of any danger; and it shall be the duty of each miner to properly prop and secure his place in order to make the same secure for him to work therein.''

And such being the statutory duties imposed on the mine foreman and miners, it is conceded that unless there is something alleged and proven in this case to take it out of the general rule, any failure to make the mine safe in the particulars covered by this statute, would be the negligence of the miner, or mine foreman, a fellow servant, and for which the master is not liable.

To bring this case within the rule of our cases of *Gartin* v. *Draper Coal & Coke Co.*, 72 W. Va. 405, and *Sprinkle* v. *Big Sandy Coal & Coke Co.*, *Id.* 358, the same as that announced in *Wolcutt* v. *Erie Coal & Coke Co.*, 226 Pa. St. 204, 75 Atl. 197, plaintiff undertook by allegation and proof to show that Coffey, the mine foreman, was also general superintendent, occupying inconsistent positions, as declared in those cases, and not eligible or competent as a strictly statutory mine foreman, and that because of its neglect to discharge its duty to employ a competent and eligible mine foreman his negligence is imputable to the defendant so as to render it liable for the injuries sustained by plaintiff on account thereof.

Another of plaintiff's theories is that he was working under one Lambert, who had a contract with defendant, through its superintendent, to load and deliver coal to the parting in the mine, and that the mine foreman's duties to aid in making the mine safe as to overhanging slate, rocks, etc., by supplying props, etc., had been delegated to Lambert, not a competent mine foreman, and that for this reason the defendant was guilty of a breach of duty under the statute, as so construed in the cases cited, and was liable for the consequential injuries to plaintiff.

As disclosed by the evidence, however, there seems to have been no negligence either on the part of the defendant or the mine foreman in failing to supply timbers or props. The mine foreman says there were several props in the room where plaintiff was hurt, and that there were plenty of other props at the parting. Though plaintiff says he did not see any props in the room, he does not say positively that none were there. He admits there were props at the parting, and Lambert, his

co-worker, and he had the means, a car and a mule, to get the props into the room. What duty then did the defendant owe them that it had not performed? It was not the defendant's duty, or that of its mine foreman, but the acknowledged duty of the miners, as they progressed with their work to set the props and make their working places safe.

But we have concluded that it is unnecessary to go into these and numerous other questions presented by able briefs of counsel, for assuming negligence on the part of defendant, in the particulars referred to, contributory negligence and assumption of risk by plaintiff, a skilled and intelligent miner, after seeing, understanding and fully appreciating the danger to which he was subjected immediately before the slate or stone fell upon him, constitutes a complete defense to his action.

Both these defenses, we think, are fully supported by plaintiff's own account of the situation in the mine, his own conduct there, and the manner in which he sustained his injuries. In answer to questions he said: "A. There was some coal loose and slate already loose down, and we threw out that and loaded up what was around loose and then we loaded the car about two-thirds and we had got what loose coal there was and then we had to either dig or shoot it, and I decided on digging the coal, but I was afraid of this slate, I was satisfied that when I went to picking the top would go to working, and I wanted to get that slate without digging, and I examined the slate and it seemed to be solid, and there is where the damage was, when I went to digging in the coal. Q. You say you were satisfied that when you went to digging on this pillar that the top would go to working? A. There wasn't any timbers set, you know, and there is where the top, of course, will come down if a fellow gets to working and I wanted to try to get that place timbered and that is where we wanted it. Q. You knew if you went to working on the pillar that the top would begin to work? A. Personally, of course, it is like anything else you take, it is bound to be heavy. Q. You knew that if you dug on that pillar that the top would begin to work? A. Why, of course it will work; we all know that. Q. And you said a while ago that you were satisfied that it would work; that you were satisfied that if you dug on that pillar it

would go to working, the top would begin to work; didn't you say that to the jury? A. Why, yes, I said that. Q. And you stick to that, don't you? I say you said that and you stick to that statement, don't you? A. Sure. Q. You knew that if you dug on that pillar and let the coal down that that top would come down, didn't you? A. Why, to some extent. I said it would go to working. Q. What do you mean by the top would go to working—get loose? A. Get loose, I reckon. That is all I know about it. Q. You knew that if you dug out the coal out of that pillar, dig down in the pillar, that that would let down the top, didn't you? A. Sure.''

But it is contended that plaintiff cannot be charged with having assented to risk the dangers because of the extraordinary character thereof, and because props were promised by Lambert within a reasonable time, and being thus assured of a safe place, or the means of making it safe, he had the right to continue to work without assuming the risk of personal injuries. If defendant had been proven guilty of any negligence contributing in any degree to the injuries sustained there might be some basis for this contention. Lambert was not authorized by defendant to direct plaintiff to work in a dangerous place in the mine, or to continue working there without making it safe with props. No notice had been given to the mine foreman that props were needed or demanded, and, as we have seen, props were near at hand in the mine to make the working place safe. A safe place to work in a mine where the miners are at work and continually changing the conditions means, under our law, a safe place in the first instance. The owner is not an insurer against personal injuries in the mine. He cannot by himself or agent be present every moment to see that the miners do their duty to prop the roof as they progress at the face of the coal. True it is the duty of the mine foreman to perform the duties imposed upon him, and of the owner when required to provide the material as the law requires, but the miners also have duties to perform for their own safety. We have decided that a miner who takes orders from one not in authority cannot hold the owner responsible for personal injuries sustained in executing such unauthorized order, so that if Lambert did direct plaintiff to work in an unsafe place, being unauthorized,

the defendant cannot be rendered liable for his act. In accepting orders from him plaintiff assumed the risk. *McMillan* v. *Coal Co.*, 61 W. Va. 531; *Dwyer* v. *Raleigh Coal & Coke Co.*, 68 W. Va. 741.

Was plaintiff guilty of contributory negligence? It follows that if he knowingly continued to work in a dangerous place, and by what he did, rendered it still more dangerous, he negligently contributed to his injuries precluding recovery. But it is said in rebuttal of this plain proposition that he was justified in remaining and working in the dangerous place by the promises of Lambert, representing the defendant, to make the place safe. This upon the principles of *Parfitt* v. *Sterling Veneer & Basket Co.*, 68 W. Va. 438, 69 S. E. 985; *Hesson* v. *Penn Furniture Co.*, 70 W. Va. 141. These decisions are inapplicable to cases involving safety if the place to work is constantly changing and being rendered more dangerous by the work being done by the servant. As held in those cases a servant may in some instances remain at work on request of and promise by the master to make repairs, or put the place in a safe condition in a reasonable time. But how could we apply those cases to cases like this, where every stroke of the servant is likely to pull the house down upon his head? Cases of this kind are governed by the exception to the general rule noted in *Miller* v. *Berkeley Limestone Co.*, 70 W. Va. 643, where we said: "The general rule which obliges the master to furnish his servant a reasonably safe place in which to work, does not apply to a quarry where the work to be done necessarily changes conditions and renders the place more or less dangerous as the work progresses." Plaintiff's own evidence fits his case into this exception to the general rule, and must defeat any recovery by him against the defendant.

The judgment below must, therefore, be reversed, and judgment entered here on the demurrer to the evidence, for defendant, and that plaintiff take nothing by his action, and that defendant recover its costs in this court as well as those incurred in the circuit court herein.

*Reversed and entered here.*