# CHARLESTON.

HAPTONSTALL v. BOOMER COAL & COKE CO.

Submitted May 2, 1916.   Decided May 16, 1916.

1. MASTER AND SERVANT—*Injuries to Servant—Declaration—Sufficiency Against Demurrer.*

   The declaration in this case for personal injuries sustained by a miner in a coal mine, due to the alleged negligence of the mine foreman, is good on demurrer.   (p. 413).

2. SAME—*Injury to Miner—Negligence of Foreman—Failure to Warn.*

   Where a mine foreman in addition to his statutory duties is also the duly authorized representative of the owner or operator of a coal mine, in employing and discharging miners and assigning them to their places of work in the mine, and who negligently and without notice or warning assigns one of said miners, ignorant thereof, to work at a place suddenly become dangerous and known to him to be dangerous, the owner or operator is liable in damages for consequential personal injuries sustained by the miner, due to no fault on his part.   (p. 414).

3. SAME—*Injury to Servant—Duty to Warn—Question for Jury.*

   Whether under the facts proven in this case plaintiff was entitled to notice or warning of the dangerous condition of the roof under which he was assigned to work was a question of fact for the jury.   (p. 420).

4. NEGLIGENCE—*Master and Servant—Injury to Miner—Contributory Negligence—Questions for Jury—Sufficiency of Evidence.*

   Contributory negligence is a matter of defense, the burden of establishing which is usually upon defendant.   Though an employee have some notice, and remains at work, the test is, did he know, or ought he to have known, by the use of ordinary common sense and prudence, as applied in the particular instance, that dangers were before him and injury likely to result from the defects or conditions surrounding him, a question of mixed law and fact generally for jury determination, and one properly determined by the jury adversely to the defendant in this case.   (p. 420).

   (POFFENBARGER, JUDGE, dissenting.)

Error to Circuit Court, Fayette County.

Action by M. L. Haptonstall against the Boomer Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Payne, Minor & Bouchelle,* for plaintiff in error.

*Harold W. Houston,* for defendant in error.

MILLER, JUDGE:

Plaintiff, an adult miner, employed in defendant's coal mine, was injured in December, 1911, by a large piece of slate falling upon him from the roof of the mine in the entry where he was at work on a night shift. He sued and recovered a verdict and a judgment against defendant for five thousand dollars, which judgment is the subject of the present writ of error.

The declaration is in three counts. No effort was made on the trial to sustain by proof the second and third counts, but we think these counts good on demurrer and that the demurrer thereto was properly overruled. We are of opinion also that the first count is good, and that the demurrer thereto was likewise properly overruled. It is objected that it is defective according to the rule laid down in *Peterson* v. *Paint Creek Collieries Co.,* 71 W. Va. 334, 76 S. E. 664. The point adjudicated in that case is that: "Mere notice from the mine boss to the operator of a defect in the roof of the mine and ignorance thereof on the part of an employee, injured by such defect, are not sufficient to impose liability upon the operator for the injury." But this count goes further; it avers that in addition to the duties devolving upon the mine foreman by law, the defendant clothed him with full power for it and in its name, to hire and discharge miners and workmen in said mine, and to assign them in said mine to their places of work, and that towards plaintiff so employed it became and was the "duty of defendant to use due, reasonable, and ordinary care for the said plaintiff while he was so employed and working in said coal mine * * * * * in providing plaintiff a reasonably safe place in which to work,

and also   *   *   *   *   to use reasonable skill and care for the safety of the said plaintiff while engaged in operating and working in said mine in the employment of the defendant as aforesaid.'' And by way of averring defendant's breach of these duties it is further averred: ''That the said defendant company, acting by and through its mine foreman aforesaid, who was duly authorized to hire and employ workmen and servants and assign them to places to work in said mine as aforesaid, negligently, carelessly and knowingly assigned and directed plaintiff to work at a place in said coal mine that was extremely dangerous and hazardous, in this, that the said defendant, acting by and through its mine foreman aforesaid, had wrongfully and negligently permitted large stones, slate and earth to hang loosely in and about said mine and in and about the roof of the same at the point where the said plaintiff was at work for the defendant, and at the point where he was assigned to work by the said mine foreman, acting for said defendant as aforesaid and the said defendant then and there wrongfully and negligently failed to provide the said coal mine and roofing of said coal mine with sufficient props and stays to keep the stone, slate, coal and earth that hung loosely in and about said roofing from falling in and upon said plaintiff while engaged in such work for and in the service of the defendant as aforesaid and by means whereof and while the said plaintiff hired and employed by the said mine foreman as aforesaid, acting for and in behalf of the defendant company, was engaged in the work and service of the defendant, and at the place to which he was negligently and carelessly assigned to work by the said mine foreman, large and ponderous pieces of stone, slate and earth fell from the roof of the said mine in and upon plaintiff and by such falling in of said slate, stone and earth, so negligently permitted to hang loosely in and about said roof, the said plaintiff, without any fault or negligence upon his part was caught and crushed under and between said slate, stone and earth and was injured'', etc.

Though section 8, chapter 78, Acts 1907, our mining statute, in force when the injury to plaintiff occurred, requires the mine foreman of every coal mine ''to see that every per-

son employed to work in such mine shall, before beginning to work therein, be instructed as to the particular danger, incident to his work in such mine'', we decided in *Gartin* v. *Draper Coal & Coke Co.,* 72 W. Va. 405, that when the statutory mine foreman, as in this case, is also clothed by the owner with authority to employ and discharge miners and assign them to their places to work in the mine, and he employs and assigns a miner to work in a dangerous place in the mine, without discharging the duty of the master of ''apprising him of the danger and instructing him as to means of avoidance thereof, and such employee is injured or killed as a result of such action, the operator is liable, notwithstanding the statute makes it the duty of mine foremen to instruct the men working under them''; this upon the principle that such mine foreman cannot at one and the same time occupy the inconsistent positions of statutory mine foreman and superintendent of the master in the employment and discharge of employees and assigning them to work in places of danger, a principle also announced in *Sprinkle* v. *Big Sandy Coal & Coke Co.,* 72 W. Va. 358.

We think the principles of those cases apply as well in the case of an adult as in that of a minor employee when the mine foreman occupies the incompatible positions of statutory mine foreman and superintendent *pro tanto* of the operator, and particularly where the master neglects to discharge any duty to such employee, whether it be that of instructing him, or of warning him of new or unusual dangers to which he may be exposed in his new place of employment; for as Judge POFFENBARGER says in the Draper Coal & Coke Co. Case: ''If, therefore, the operator delegates them (his non-assignable duties) to the mine foreman, he thereby makes him a superintendent *pro tanto,* and, if the latter, in the exercise thereof, comes in conflict with his own duties as mine foreman, the result is logically the same, as regards that act, as if he were the superintendent in the fullest sense of the term.''

While this first count may not be as specific in some particulars as it might have been, to cover the case presented by the proof, nevertheless, we think it is sufficient as a pleading to cover the case proven and that the demurrer thereto was

properly overruled. The facts on which plaintiff's right of recovery is predicated are as follows: Plaintiff at the time of his injuries had been employed by defendant in various positions for six or seven years, and had then been employed on the inside of the mine in digging coal about six weeks, on what was called a double shift, a day shift and a night shift, and earning more money than he could on a single day or single night shift.

Plaintiff was originally employed by Hazlett, defendant's mine foreman. On the morning of the day on which he was injured he was at work in the mine at a place where he did double shift duty. Hazlett then notified him that he intended to discontinue that place as a place for double shift work and asked him what he desired to do. Plaintiff informed him that being employed for double shift duty, he desired to continue at that kind of work and Hazlett informed him that he might do so at the place in the mine designated where a new entry was being driven. It was then and there agreed that he should begin that night at about six o'clock, and accordingly he and one Callison, his "buddy", or helper, went to the place and at the time appointed, and began the work of loading up some coal left by Montague and Nutter, the miners employed there on the day shift. After cleaning up they put in a shot and shot down the coal which had been undercut for them by the machine on the mine. The roof of this entry seems to have been an unusually good one, and up to that time no props of any kind had been required and none used, and plaintiff's attention was not called to any danger in the condition of the roof until some two hours after he and his buddy had been at work, and had loaded out nearly all of their coal and would soon have been ready to quit and go out of the mine. It was then that they heard a little noise and looking up saw a little scale or blister on the roof, but nothing that indicated to them any danger, but as a matter of precaution they concluded to use a couple of cross ties found in the mine to prop up the place, when as they were in the act of trying to put these timbers under a large piece of slate fell in and upon plaintiff injuring him as alleged. The main body of this piece of slate was over or above the coal which had been mined out by Montague

and Nutter, on the day shift, though some of the testimony tends to show that one of the edges probably projected a little over the coal which plaintiff and his buddy had shot down and loaded out on their night shift.

But the testimony of Montague and Nutter, witnesses for plaintiff, is that a little before twelve o'clock of the same day, while they were at work on the day shift, Hazlett, the mine foreman, and Henry, the district mine inspector, appeared and their attention was called to the roof. Montague and Nutter do not seem to have regarded the roof particularly dangerous, for they went on and loaded out their coal. Hazlett, however, promised to send props in right away, but failed to do so, and after waiting until about three o'clock for the props to be sent in they went away and did not return to the mine until the next morning after the slate had fallen and injured plaintiff, and when they brought props in and propped up the roof at that point. Plaintiff says that although he noticed the scale or blister he did not think "it hardly amounted to anything", and that he just thought they would set the tie under there for an extra precaution and keep it safe from falling on their arms, and that he had had no notice that the roof was dangerous. Hazlett and Henry, however, who had inspected the roof that day evidently considered the roof unsafe, for Hazlett promised to send in the props to Montague and Nutter, who waited until three o'clock, and not getting them went away.

These being the main facts on which relief is sought, it is affirmed on behalf of plaintiff, as a legal proposition, that Hazlett, being not only statutory mine foreman, but also representative of the defendant, employing and discharging miners, and assigning them to their places of work, the knowledge which he got as mine foreman, in connection with Henry, the district inspector, of the dangerous condition of the mine on the very day he sent plaintiff to work there, was notice to the owner of the mine of its dangerous condition, and that it was the duty of defendant after notice of this new and changed condition in the mine to have notified plaintiff, and given him warning before suffering him to go into the death trap thereby set for him.

To be sure it was not only the duty of Hazlett, as mine foreman, not to allow miners to work in dangerous places, but to warn them out of such places, even though the owner or superintendent of the mine should set them to work there; but it is no part of the statutory duty of a mine foreman to put men to work at any place in the mine, except to perform some duty imposed upon him by statute. to make the places safe. If as representative of the owner in getting out the coal he is given authority outside of these statutory duties to employ and discharge workmen and assign them to places of work, the notice he gets of the dangerous condition of the mine will be imputable to the owner.

So we think the proposition relied on is sound in law, and is supported by our decisions as well as by the decisions of other states with like or similar statutes. *Sprinkle* v. *Big Sandy Coal & Coke Co., supra; Gartin* v. *Draper Coal & Coke Co., supra; Pocahontas Collieries Co.* v. *Rukas,* 104 Va. 278; *Pocahontas Collieries Co.* v. *Williams,* 105 Va. 708; *Druck* v. *Antrim Lime Co.,* 167 Mich. 154; *Frazier & Foster* v. *Danner,* 146 Ky. 76; *Simone* v. *Kirk,* 173 N. Y. 7; *Wilson* v. *Alpine Coal Co.,* (Ky.) 81 S. W. 278; *Consolidated Coal Co.* v. *Wombacher,* (Ill.) 24 N. E. 627; *Consolidated Coal Co.* v. *Gruber,* 188 Ill. 584, affirming same case, 91 Ill. App. 15; *Iroquois Furnace Co.* v. *McCrea,* 91 Ill. App. 337; White on Personal Injuries in Mines, sections 392, 463; 3 Labatt's Master & Servant, (2nd Ed.) section 1146; *Strahlendorf* v. *Rosenthal,* 30 Wis. 674.

True under our statute the duty is enjoined upon a mine foreman to see that the places of work are made reasonably safe, and not to permit workmen to work in places of danger, and in so far as the performance of these duties is concerned, according to our decisions, the negligence of the mine foreman, as such, is the negligence of a fellow servant. But where the owner or operator of a mine devolves upon the mine foreman authority also to employ and discharge workmen, and for him to superintend the getting out of coal, a position incompatible with his statutory duties, notice to him of the defects in the mine rendering it dangerous is imputable to the owner, and if, as such representative, the mine foreman, with-

out notice or warning to an employee, of new or changed conditions in the mine, rendering the place particularly and unusually hazardous, puts him to work therein, the mine owner will be rendered liable for his breach of duty to warn such employee of such dangers, as at common law.

In *Consolidated Coal Co. v. Wombacher, supra,* it was held that: "Where the foreman of a mine tells a laborer to go and work in a certain room in the mine, of the condition of which the laborer knows nothing, and he does so, and is injured by the roof falling on him, the foreman is presumed to know of the condition of the roof, and his negligence in not telling the laborer about it is the negligence of the master." In *Pocahontas Collieries Co. v. Rukas, supra,* a case in which a fire occurred in the mine after plaintiff had gone in to work on a higher level than the place where the fire occurred, and the defendant, being charged with notice thereof, was held liable for the injuries sustained, the court saying: "The duty of the defendant to warn plaintiff's intestate of the changed conditions and the certain peril to which he would be exposed by continuing to work in the mine is corollary to the primary duty of exercising ordinary care to furnish him a reasonably safe place in which to work in the first instance. The main principle has repeatedly received the sanction of this court, and the subordinate proposition seems also to be well settled." The case of *Simone v. Kirk, supra,* involved an original employment. The court says: "When the foreman employed Simone and set him at work on that pile without warning, it was the same in legal effect as if one of the defendants in person had done it knowing of the danger as it then existed." In *Consolidated Coal Co. v. Gruber, supra,* it is decided that: "An assistant mine manager who temporarily takes charge of and runs a machine for undercutting coal, for the purpose of ascertaining its defect so he may repair it, as part of his duties as assistant manager, does not, as matter of law, thereby become the fellow-servant of the shoveler who follows the machine." In *Strahlendorf v. Rosenthal, supra,* it was held that while one who agrees to work for another in any employment takes upon himself the usual risks of such employment, yet "if there exist facts

known to the employer and unknown to the employee, increasing the risks of such employment beyond its ordinary hazards, the employer is bound to disclose such facts to his employee; otherwise he will be liable as for negligence in case of injury to the latter resulting from such unusual risks.'' In 3 Labatt's Master & Servant, section 1146, it is said: ''This principle is equally applicable whether the risks in question existed at the time when the servant commenced the performance of his contract, or were afterwards created by some material change in the intrinsic condition or relative arrangement of the instrumentalities by which the work was being done, or the substances which the injured person or his coemployees were required to handle.'' In White on Personal Injuries in Mines, section 463, the author says: ''Whereever the progress of the work, such as excavations in mining, has brought about new or changed conditions, which would increase the perils of the employees, unacquainted therewith, then the employer is bound to disclose such increased dangers to his employees, and for a failure to do so, is guilty of actionable negligence, in case of injury.'' Citing New York, Alabama, and Illinois cases. And as particularly applicable to this case, the same writer says: ''A member of a night shift, in a mine, has, for example, been held entitled to notice of the undermining of a shaft, by the day crew which rendered it more dangerous.''

It may be said, however, that the facts in evidence in this case, and the character of the employment, do not show that plaintiff was entitled to notice of warning. This we think in this case was a question for the jury. *Druck* v. *Antrim Lime Co., supra; Pocahontas Collieries Co.* v. *Williams, supra; Frazier & Foster* v. *Danner, supra.*

The defense of contributory negligence is particularly relied on. This defense is predicated upon the theory that plaintiff by ordinary care could have discovered the condition of the mine, and that it was his duty to do so, and that after being warned to some extent he undertook to prop up the mine with inferior props, cross ties, not provided for that purpose, and upon this theory it is contended this case is ruled by the recent case of *Burton* v. *War Eagle Coal Co.*, 77 W. Va. 319,

87 S. E. 547. That was a case in which plaintiff was engaged in robbing pillars, a most dangerous employment, and the evidence tended to show that props were at his disposal in the room where he was at work; besides, his own evidence showed conclusively that he saw, understood, and appreciated his danger, and knew that every stroke he made with his pick was likely to pull the roof down upon him. No such case is presented here. Plaintiff says he did not know of the danger. The roof under which he was working was still regarded as safe. It had not been propped and props were not thought to be necessary until the mine was inspected by the mine foreman and Henry, a few hours before plaintiff was injured. Contributory negligence is defensive, and the burden rests upon defendant to establish it, unless, as in the Burton Case, plaintiff's own evidence proves the fact. In *Graham* v. *Newburg Orrel Coal & Coke Co.,* 38 W. Va. 273, Judge BRANNON says: "It is true that if an employee know that the machinery or appliances are defective, or the place, where he works, is not in proper state or condition, and he continues in service, he cannot recover for injury flowing therefrom. But this rule is not without exception. Such mere continuance in service is not per se or infallible negligence. The danger must be such as may reasonably be expected to entail accident and injury, not a remote probability or chance of accident. It must be such as a fairly prudent, cautious man ought to think likely to result in accident, and which he ought not to risk. Does the rule require the employee in all cases to stop work simply because he knows of defective machinery or condition?" And as Judge BRANNON said in that case, so it may be said of the plaintiff's conduct in this case: "The question is, did he know, or ought he to have known, by the use of ordinary common sense and prudence, as applied in the particular instance, that dangers were before him likely to flow from the defect or condition? not simply that he knew the defect or condition existed. He need not in all cases quit work. He may run some risks, provided they be such as a prudent careful man would under the circumstances, run." The question of contributory negligence in this case was, therefore, one for the jury. Besides the other cases cited, we cite *Norton Coal*

*Co. v. Murphy*, 108 Va. 528; *Goshorn* v. *Wheeling Mold &
Foundry Co.*, 65 W. Va. 250. The case of *Dwyer* v. *Raleigh
Coal & Coke Co.*, 68 W. Va. 741, is wholly unlike the case at
bar. In that case the employee had notice that the place in
the mine where he was set to work by the superintendent had
been previously condemned by the mine foreman. So we con-
clude that the defense of contributory negligence has not been
maintained.

Several points are made on the instructions to the jury giv-
en and refused. We have examined these instructions with
reference to the points made for and against them, and find
no substantial or reversible error in the rulings of the court
thereon. The questions presented are not new and we deem
it unnecessary to respond specifically to each of the points
made.

Our opinion, therefore, is to affirm the judgment.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting)*:

I am unable to concur in this decision. There is no causal
relation or connection between the act of employment and the
injury complained of, as there was in *Gartin v. Draper Coal
and Coke Co.*, 72 W. Va. 405, and *Sprinkle* v. *Big Sandy Coal
& Coke Co.*, 72 W. Va. 358. It never was the intention, in the
decision of those cases, to hold that a mine foreman acts as a
vice-principal, in the mere assignment of men to places of
work in the mine. In each of them, the ground of liability
was the act of employment, contributing directly and imme-
diately to the injury, the employee being an immature infant
placed in a dangerous place of work without warning of the
danger. The plaintiff in this case was a mature man and an
experienced miner, and the act of employment preceded the
injury by six or seven years and, therefore, could not have
contributed to it in the slightest degree.

A mine foreman like any other foreman, is the leader and
director of the men under his charge. In designating him as
foreman, the legislature simply recognized a class of men em-
ployed by coal operators at the date of the passage of the act.
He was then a fellow servant of the men working under him.

His was a work of operation, not maintenance or superintendency. For reasons of public policy, the act enlarged his powers and charged upon him other duties, some of the non-assignable duties of the master. Then, as to such duties, he became a fellow-servant of the miners. The purpose of the act was not to deny to him any of the powers he previously possessed or to change their character. In those respects in which he had previously been a fellow servant, he remained one. These included the assignment of men to their places of work. That was never regarded as an act of superintendence. It was a thing customarily and ordinarily done by foremen in all industries. In the absence of a statute altering the common law rule, a foreman acts as a vice-principal, only in so far as his authority extends to things the law puts upon the master as non-assignable duties, such as maintenance of a safe place of work, inspection, provision and maintenance of safe implements of work, establishment of rules, employment of competent co-servants and the like. In charging some of them upon the mine foreman, the statute has made him a fellow servant as to them. But it did not elevate any act of mere co-service to the class of non-assignable duties, so as to make him a vice-principal as to it. By no authority, is the mere assignment of competent men to places of work made a non-assignable duty of the master.