## CHARLESTON.

### H. E. Kinder v. Boomer Coal & Coke Company.

Submitted February 12, 1918.   Decided March 12, 1918.

1. Pleading—*Amendment—Withdrawal of Original Pleading.*

   Where an amended declaration, complete in itself, does not refer to or in any manner adopt or make the original declaration a part of it, and defendant joins issue thereon, the original declaration will be considered and treated as withdrawn and abandoned. (p. 34).

2. Master and Servant—*Action for Injury—Sufficiency of Declaration.*

   A declaration which charges that plaintiff, a minor, was coerced by the superintendent and other agents of a coal company to perform a different and more hazardous work than that which he engaged to do, and was injured in the course of the new form of work, states a cause of action sufficient upon demurrer. (p. 34).

3. Same—*Injury to Servant—Complaint—Ignorance of Servant— Coercion.*

   Though ordinarily, to charge a master with liability to a servant for injury sustained by the latter in the execution of an express direction or command of the former, it is necessary to aver the servant's ignorance of the danger incident to the performance of the act, such averment is not necessary where the declaration avers that plaintiff, a minor, was coerced into obeying such direction or command. (p. 34).

4. Same—*Assumption of Risk—Knowledge.*

   Where an employe, whether adult or minor, is transferred by one having authority to a new branch of employment and the employe accepts the change voluntarily, with full knowledge of its dangerous character, he is regarded as assuming the risks ordinarily incident thereto. (p. 36).

5. Same—*Assumption of Risk—Coercion.*

   The doctrine of assumption of risk rests upon voluntary action and if there is coercion by an agent representing the master and acting in his behalf and upon his authority express or implied, the law does not regard the servant as assuming the risk. (p. 36).

6. Same—*Coercion—Evidence.*

   Where a minor renders obedience to a superior servant, coercion will be more readily inferred than in the case of an adult under similar circumstances. (p. 36).

7. SAME—*Injury to Servant—"Fellow Servant."*

Where a foreman of mine drivers exceeds the authority conferred upon him by the master and coerces a minor employe engaged at work in a different department, loading coal, to undertake the task of driving, a more dangerous and hazardous form of employment, and injury results to the minor in the latter employment, the foreman is, nevertheless, only a fellow servant, unless his negligence relates to some non-delegable duty which the master owed to the injured servant. (p. 36).

8. SAME—*"Vice Principal"—Relation.*

Whether a superior servant, other than a superintendent or general manager, is a vice principal depends upon the nature of his negligent act, and not upon his grade or rank. (p. 40).

9. SAME—*Injury to Servant—Master's Liability—Authority of Another Employe.*

To bind a master for injury to his servant coming from the order or direction of an employe, it must appear that the person giving such order or direction had authority from the master to give it. (p. 40).

10. SAME—*Delegation of Master's Duties—Effect.*

Where a master delegates to an agent the performance of duties which the master is legally bound to perform for the protection of his servants, the agent occupies the place of the master by representation, and the latter is deemed present and liable for the manner in which the duties are performed. (p. 40).

11. SAME—*Injury to Miner—Duty of Mine Foreman—Master's Liability.*

The duty to see that refuge holes along motor roads in coal mines are maintained, as required by section 36d (2), chapter 15H, Code, 1916, rests on the mine foreman, not on the mine owner, and for injury to a minor resulting from defects therein, the master is not liable. (p. 41).

12. PLEADING—*Replication—Necessity.*

Where a plaintiff within one year after he becomes twenty-one years of age brings an action for an injury sustained by him while a minor and the one year statutory bar is pleaded, he must, to raise an issue thereon, tender and file a special replication by way of confession and avoidance; otherwise the plea is taken as true and defeats recovery. (p. 42).

13. JUDGMENT—*Validity—Issues—Necessity.*

It is the established law of this state that a judgment based on trial without joinder of an issue on traversable pleas is erroneous and reversible alone for want of such an issue. (p. 42).

14.   EVIDENCE—*Failure to Produce Evidence—Presumption.*

  If a party to an action has available competent proof to establish a fact necessary and material to his success and fails to produce it, the legal presumption is that if produced the proof would not sustain his claim for relief.   (p. 43).

Error to Circuit Court, Fayette County.

Action by H. E. Kinder against the Boomer Coal & Coke Company.   Judgment for plaintiff, and defendant brings error.

*Reversed, and remanded for new trial.*

*Payne, Minor & Bouchelle,* and *Payne & Hamilton,* for plaintiff in error.

*W. R. Bennett,* for defendant in error.

LYNCH, JUDGE:

For an injury inflicted February 19, 1910, while in the service of the defendant, the owner and operator of a coal mine in Fayette County, plaintiff who then was sixteen years and six months of age brought this action July 30, 1915 and recovered the judgment reviewed upon numerous assignments of error.

As the amended declaration is complete and does not in any manner adopt or make the averments of the original pleading parts of the amended declaration, and as upon it the parties apparently undertook to join issue and to try that issue before the jury, it is necessary to look only to the latter to determine upon demurrer whether plaintiff has stated a cause entitling him to the relief which he seeks.   *Roderick* v. *Railroad Co.,* 7 W. Va. 54.   The averments of the latter are manifold, diversified and repetitious.   In some respects they neutralize one another and show plaintiff was guilty of contributing to the injury sued for.   Disregarding those that are inapt and inconsistent and tend to negative the right to maintain the action, and omitting the usual description of the corporate character and business of the defendant, the mechanical instrumentalities used and the mode of operation, the pleading avers and the proof relating to each group of averments is, but not in the order stated: that plaintiff, a poor boy

of tender years, without experience or means of support other than his daily wages as a common laborer, was engaged with his father, an experienced miner, in digging and loading coal into mine cars to be hauled to the drift mouth and tipple for shipment to market; that such work was not inherently dangerous or beyond his ability to perform without risk of injury while working with his father; that defendant through its agents, servants and employes wrongfully and negligently persuaded plaintiff to haul coal from a remote and distant part of the mine to the parting of the switch leading thereto for one day until defendant could secure another hauler; that on the date of such change and thereafter until he was injured, a period of fifteen to thirty days, plaintiff, because of the perils of the new employment, his tender years and lack of capacity to know and appreciate the hazard, informed defendant through its superintendent and other servants and agents that he would not longer continue in the work, and requested them to relieve him from it, with which request they negligently and falsely promised each day to comply, but failed and refused so to do, and told him there was no danger; that the mining boss abused and insulted him and threatened to do him great bodily harm if he did not go back to hauling, which excited and intimidated him so that he was afraid to refuse and not to return lest the mining boss and his assistants, who were most dangerous persons, might do him great bodily harm.

According to these averments plaintiff has stated a cause of action. For if it be true, as alleged, that he was directed by the superintendent or foreman of its general mining operations, its immediate personal representative, to enter upon the discharge of the duties of a branch or department of the common employment outside of and more dangerous than work he engaged to perform, the master is liable for injuries directly chargeable to the character of the latter work, if plaintiff did not enter upon it voluntarily and did not possess the capacity to appreciate the increased risk, and was not warned of the risk or instructed how to avoid the dangers incident to the new work. "A servant, thus directed to undertake work outside of that he engaged to do, is not presumed to be aware

of its peculiar risks; and therefore, if the master does not fully explain them to the servant before putting him at such new work, the servant is entitled to assume that it has no greater risks than those which attach to his regular work, either in the nature of the work itself or in the habits of fellow servants with whom it brings him into contact." 1 Shear. & Red. Neg. § 207i; *Ferguson* v. *Middle States Coal & Coke Co.,* 78 W. Va. 465.

The declaration goes further and adds as another important element coercion by the superior managing agents of the defendant's mining plant and operations. If, as charged, plaintiff was coerced to undertake a dangerous work, one which he did not possess the capacity or experience to perform with safety, it was not necessary to aver also that he obeyed without knowledge of the danger, as was held in *McClary* v. *Knight,* 73 W. Va. 385. The coercion itself excuses the additional averment. In this manner the charge is brought directly to the knowledge of the defendant and for the purposes of the challenge for sufficiency by demurrer, the truth of the averment is admitted. The pleading expressly attributed the change in the employment to the mine superintendent for whose acts the defendant is directly chargeable. It must respond to injuries due to his negligence. His acts are its acts. From liability therefor there is no escape if they are done while he is acting for it and within the scope of the service entrusted to him. This requirement is fundamental and needs no citation of authority.

It may be observed in this connection that while the proof introduced to support the action, defendant offering none, shows the change of employment and objection thereto and the injury complained of and inflicted in the manner hereafter described in greater detail, the proof does not trace to defendant through its superintendent the requirement to go outside of the original work. There is nothing to show that he had anything to do with moving plaintiff from mining to hauling coal. Nor did the mine foreman take any part in directing or requiring such change of work. Plaintiff does not say he did nor does any one else. He had no such authority under the statute except under special circumstances

which do not arise in this case. The statute fixes his status and defines his duties, and as interpreted by judicial decisions, our own among others, his failure to perform such duties will not render the operator of a coal mine responsible for injuries chargeable to his negligence. Moreover, he is within the fellow servancy category or classification and if negligent there is no redress against the operator, except where the mine foreman has the expressed or implied authority of the master to exercise functions incompatible with the performance of his statutory duties, such as the non-delegable duties of the master, as held in *Sprinkle* v. *Big Sandy Coal & Coke Co.*, 72 W. Va. 358; *Gartin* v. *Draper Coal & Coke Co.*, 72 W. Va., 405; *Haptonstall* v. *Boomer Coal & Coke Co.*, 78 W. Va. 412.

If, however, the new work was more hazardous and plaintiff had not the capacity to discern, appreciate and apprehend the increased peril, upon defendant devolved the duty to warn and instruct him and if defendant failed so to do, it must respond to the injury due to such omission. But it is only when the duty arises that the omission serves as the basis of a recovery. For, under the doctrine of the assumption of risks, a contract to engage in the master's business is presumed to be made in contemplation of the nature and character of the work to be done, and the presumption continues while the risks and dangers remain the same, or virtually the same; and except as modified by statute the doctrine applies alike to all employes, except as already noted. Whether a servant is within the classification which imposes upon the master the obligation to warn, usually is a question for the jury to solve. That question the declaration properly presents.

It was not the superintendent of the mining operations or the mine foreman, but Bostick, who requested or directed the change of employment. He had charge only of that department whose duty it was to require the coal to be delivered at the tipple for shipment to market as and when the mining employes in the several apartments of the mine had performed the work assigned to them preparatory to such delivery. This was the extent of the authority conferred upon Bostick and of the duty assigned to him by defendant. Beyond these, he

could not exercise other powers or authority. He could not control the action or conduct of any employe not working or hired to work in his department. He was merely a boss hauler, one who "looks after the drivers, mules and trappers" and, as plaintiff and Tatum testify, employs and discharges his subordinates.

It is therefore necessary to determine whether Bostick was a vice principal, whose assumption of authority to control employes outside of his immediate department was such as to require defendant to respond for consequential injuries chargeable to that assumption, or a mere fellow servant for whose negligence defendant is not liable. Upon this question the decisions are not harmonious.

One group holds that a servant of superior rank with authority to control, and by whose negligent acts or orders injury to a servant of a lower grade is caused, is as to him a vice principal, not a fellow servant, and his negligence is that of the master. Even under this view, mere authority to employ and discharge men is not of itself sufficient to constitute him a vice principal; power to control the inferior servant, in addition to superiority of rank, is essential. When these two elements are present, the superior is regarded as directly representing the master and his negligence in giving orders and directions is that of the master, not that of a mere fellow servant. 4 Labatt, Master & Servant, §§ 1447 et seq.

A second view is that to constitute a superior servant a vice principal as regards an employe of a lower grade, it is essential that he possess higher characteristics than mere superiority in rank and authority to control. He must exercise a relatively high quality and wide scope of superintendence, not that form which is exemplified by the gang boss and is largely mechanical in its nature. Under this view, the latter form of superintendence partakes more of the characteristics of fellow servancy than of vice principalship. 4 Labatt, §§ 1441 et seq.

Still another view, the one adopted and followed in this state, is that the rank of the delinquent employe is not the test of vice principalship, but the character of the negligent act is the determining quality. If the duty violated is one of the non-delegable duties owed by the master to the in-

jured servant, the delinquent employe is a vice principal toward him, not a fellow servant. *Jackson* v. *N. & W. Ry. Co.,* 43 W. Va. 380. The power to employ men to work in his department and to discharge them when inefficient and superintend their work does not constitute a foreman a vice principal of the employe, except where the negligent act relates to some non-delegable duty of the master himself. Not grade or rank but the character of the act itself which causes the injury goes far to determine the question considered. *Miller* v. *Berkeley Limestone Co.,* 70 W. Va. 643. To render the master liable for the consequences of the negligent act or omission to act of one servant where injury ensues therefrom to another servant of the same master in a common employment, the act or omission must be in respect of some duty incumbent upon the master himself, some non-delegable duty. *Jackson* v. *Railway Co., supra.* If the master delegates to another the performance of non-assignable duties, thus making him a representative of the master, the latter must respond for the results of the negligence of the former.

Logically, these observations introduce for determination the further inquiry whether defendant is chargeable with the consequences resulting from the alleged coercion of plaintiff by Bostick. It is well settled that where an employe is transferred by one having authority to a new branch of employment and the employe accepts the change voluntarily with full knowledge of its dangerous character, he is regarded as assuming the risks ordinarily incident to the changed surroundings and conditions. This rule applies to all adult employes and to minors also, subject to certain qualifications not now important to observe. Labatt, §§ 1203, 1385; Shear. & Red. Neg., §§ 201i, 218. To the main principle stated, however, there is an important qualification, namely, that the servant must voluntarily accept the change in the employment. The doctrine of the assumption of risk rests upon voluntary action. If there is coercion by an agent representing the master and acting in his behalf and upon his authority, express or implied, the law does not regard the servant as assuming the risks.

There is no attempt to show coercion on the part of any

other superior employe than Bostick. It is necessary during the discussion, therefore, to keep in mind what has already been noted, that Bostick had no authority, at least none is proved, to require plaintiff to quit one kind of work and assume another and a different kind. The unwillingness of plaintiff to undertake the new work, however, was manifest from the very first and continued up to the day he was injured. When first called upon by Bostick to do the hauling, he objected because he was too light for the work and lacked experience in it, but when Bostick threatened to deprive him and his father of their "turn" of cars, he yielded to the economic necessity and undertook the work. The greater number of adjudications are to the effect that fear of dismissal or loss of position is not such coercion as will prevent the application of the doctrine of the assumption of risk, where the dangers of the work are apparent and known to the plaintiff. Shear. & Red. Neg., § 211a.. However that may be when the threat is against an adult servant, where he is a minor rendering obedience to a superior servant, great allowance should be made in his favor with respect to the voluntariness of the assumption of risks. For these reasons we are of the opinion that coercion may fairly be inferred from the proof adduced at the trial.

But the more troublesome question is, shall defendant be held responsible therefor, when the coercion was exercised by an employe acting beyond the scope of his authority? According to the rule laid down in this state, the test of vice principalship is not the rank of an employe or his authority to employ and discharge, but the character of his negligent act. Is it a non-delegable duty of the master to see to it that no servant in his employ is coerced by any other servant to do work of a different nature from that which he was employed to do? Clearly, where the superior employe has authority to change a servant from one form of employment to another, the duty not to coerce is non-delegable and the delinquent superior servant will be held to be a vice principal. But the master's non-delegable duty should be limited to those to whom he entrusts authority to change the employment of other servants. It is not proved that Bostick had

such authority, hence we are compelled to hold that he was a mere fellow servant of plaintiff. To hold otherwise would subject the master to liability whenever any unauthorized employe, even of the same rank as the injured man, chose to coerce his fellow servant into a dangerous form of work. *McMillan* v. *Coal Co.*, 61 W. Va. 531.

Other averments of the amended pleading, admitted by the demurrer to be true, superimpose upon coal haulers not only the duty to haul from the several mine apartments served by the haulers cars loaded with coal mined therein to the several junctions of the main and lateral tracks for haulage therefrom by train loads drawn by high powered electric motors over and along a central mine railroad to the drift mouth and tipple; but also the further duty to go to the drift mouth when enough loaded cars to constitute a train are assembled at the junction, and inform the motorman of that fact and return with him on the motor or on empty coal cars attached to it to the junctions where they are disconnected and deposited on the sidings for distribution by the haulers. While performing the latter service, plaintiff received the injuries for which he brought this action. It resulted, as he charges, from the negligent operation of the motor by defendant's agent, who, instead of checking the speed as the train approached the junction to permit the disconnection of the motor and empties and run the latter through the latches onto the sidings, accelerated the speed on a down grade as the motor neared the junction, when plaintiff, fearing a wreck, hurriedly attempted to leap from the car into a manhole or place of refuge, as he supposed, but which, he charges, defendant through the negligence of its incompetent servants and agents had permitted to be filled with ''gob'', as it also did the space between the railroad tracks and walls of the main haulway at, along and near the siding; whereby and as a result of the negligence and incompetency of the motorman and the negligent omission of other agents and servants of the defendant, plaintiff received the injury and defendant became chargeable therewith.

If the haulway was in the condition averred in the declaration and proved by the ex parte evidence introduced, that condition, though due to negligence, cannot be attributed to

82 W. Va.

the defendant, unless the default was due to the selection and appointment of an incompetent statutory mine foreman or mine boss, as such an appointee frequently is called and known. As to his lack of qualification for the position there is not, however, the slightest proof. This requisite he must therefore be assumed to possess. If competent and qualified, his negligence in the discharge of the duties imposed upon him by statute in the operation of the mine is not, as observed, chargeable to defendant. *Williams* v. *Thacker Coal & Coke Co.,* 44 W. Va. 599; *McMillan* v. *Coal Co.,* 61 W. Va. 531; *Bralley, Admr.* v. *Coal & Coke Co.,* 66 W. Va. 278. In *Helliel* v. *Piney Coal & Coke Co.,* 70 W. Va. 45, the rule as to refuge holes in coal mines is thus stated in the syllabus: "The duty to see that refuge holes along motor roads in coal mines are kept, as required by section 10 of chapter 78, Acts of 1907, rests on the mine foreman, not on the mine owner, and for injury to a miner resulting from their absence the mine owner is not liable." For further discussion of the general scope of the mine foreman's duty, see *Jaggie, Admr.* v. *Davis Colliery Co.,* 75 W. Va. 370.

For the most part the evidence introduced upon the trial of the case was directed to the condition of the haulway, upon the theory that the failure to keep it free of obstructions was the proximate cause of the injury. This theory not being tenable for the reasons assigned, defendant's motion to exclude should have been sustained and it was error not to do so.

It is necessary also to ascertain and determine whether, upon the failure of the plaintiff to reply specially or at all to the plea of the statute of limitations promptly interposed, the trial court should thereupon at once have entered a non prosequitur order. When injured, plaintiff was sixteen years, six months and seven days old, according to his testimony partially corroborated by his father, and was twenty-one years, ten months and twenty-eight days old when he brought this action. No averment of the original or amended declarations attempts definitely to fix any age; the nearest approach is that when injured he "was young and tender in years and incapable of knowing and appreciating the dangers incident

to said employment'', hauling coal; but speaking as of the date of the injury, he fixes his age as past sixteen.  An issue upon the special plea of the statute therefore was not only important but essential to the further maintenance and prosecution of the action.  It is well established in this state that a judgment is erroneous if obtained without an issue in an action brought in the circuit court; *Shires* v. *Boggess,* 68 W. Va. 137.  It is perhaps essential to render admissible proof of age to remove the statutory bar.  For, although plaintiff, if under twenty-one, could by means of the provisions of section 16, chapter 104 of the Code, maintain this action, if brought within one year after attaining his majority, that period had almost elapsed before he sued.

The competency and sufficiency of the proof of the age of plaintiff when injured, he then being a minor, is challenged on the ground of the nonproduction of available competent documentary evidence when demanded, which, if properly and sufficiently identified and authenticated, would set at rest any controversy touching that subject.  His mother doubtless knew the exact date of his birth, and, though living and residing in the county wherein the trial occurred, she was not called to testify nor was any reason shown or claimed explaining or excusing her absence.

There was, however, other proof of plaintiff's age when the injury occurred and of the date of his birth, which, when compared with the date of the writ, showed that the action was brought within one year after plaintiff attained his majority.

What has been said as regards the nonproduction of available documentary evidence material for the true ascertainment of an important fact at issue between the parties to an action, when demanded or excepted to and assigned as erroneous, applies with equal forcefulness to the failure to introduce a witness who alone besides plaintiff witnessed the infliction of the injury sued for, and who then was present in court in obedience to the command of a summons on plaintiff's behalf and not called to testify, the presumption in each instance being that the document if produced and the witness if examined would not support the claim of the party upon whom the duty devolved to prove such fact.  In other

words, as held in *Despard* v. *Pearcy*, 65 W. Va. 140, and to the same effect in many other cases, "If a party have it in his power to present a fact necessary or beneficial to his cause, his failure to present it is taken as conclusive of the non-existence of such fact."

For these several reasons we reverse the judgment complained of, set aside the verdict and grant a new trial.

*Reversed, and remanded for new trial.*