# CHARLESTON.

John A. Towns *v.* Monongahela Railway Company

(No. 6134)

Submitted May 8, 1928.          Decided May 15, 1928.

1.  Master and Servant—*Whether Railroad Employee Was Engaged in Intrastate or Interstate Commerce at Time of Injury is Law Question for Court, Where Evidence Does Not Conflict; Where Evidence Does not Conflict, Submitting to Jury Whether Railroad Employee Was Engaged in Intrastate or Interstate Service at Time of Injury is Error (Federal Employers' Liability Act [45 USCA §§ 51-59]).*

    Whether an employee of a railroad company was engaged in intrastate or interstate service at the time of an injury received by him is a question of law to be determined by the court, where there is no conflict in the evidence; and in such case it is error to submit that question to the jury. (p. 574.)

    (Master and Servant, 39 C. J. § 1306.)

2.  Same—*Under State Law, Railroad Employee Assumes Ordinary Risks of Employment; Under State Law, Duties and Obligations of Railroad Company to Employees Are Limited to Extent of Risks Assumed, Including That of Negligence of Fellow Servants; Under Federal Employers' Liability Act, there is Less Assumption of Risk by Railroad Employee Than Under State Law; Under Federal Employers' Liability Act, Fellow Servant Rule Does Not Bar Right of Recovery; Under Federal Employers' Liability Act, Con-*

*tributory Negligence Does Not Bar Recovery; in Railroad
Employee's Action for Injuries, Where it Appears From
Undisputed Evidence That Either State or Federal Law
Governs, Court Should Instruct Jury Under Law Which
Governs, Where Declaration is Predicated on Acts in Separate Counts (45 USCA §§ 51-59).*

The right of recovery against a railroad company for personal injuries received by an employee is different under the state law from that under the federal liability act. Under the state law the employee assumes the ordinary risks of the employment, and the duties and obligations of the company are limited to the extent of the risks assumed including that of injury by negligence of fellow-servants; while under the federal act there is less assumption of risk and the fellow-servant rule, and contributory negligence do not bar the right of recovery. And where it appears, as a matter of law, from unconflicting and undisputed evidence, that either the state or federal law governs the right of recovery, it is the duty of the court to instruct the jury under the law which governs; and not leave it to .the jury to determine under which law the right of recovery falls, where the declaration is predicated on the federal and state laws in separate counts. (p. 577.)

(Master and Servant, 39 C. J. §§ 797, 892, 922, 1030, 1406.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

MILLER, PRESIDENT, absent.

From the Circuit Court, Marion County.

Action by John A. Towns against the Monongahela Railway Company. Judgment for plaintiff, and defendant brings error.

> *Judgment reversed; verdict set aside;
> new trial ordered.*

*Rollo J. Conley,* for plaintiff in error.
*Victor H. Shaw,* for defendant in error.

LIVELY, JUDGE:

Plaintiff obtained a verdict and judgment of $5,000.00 for personal injuries received as an employee of defendant, and the latter prosecutes error.

There is no material controversy of fact. The controlling question on this writ is whether plaintiff was engaged in

intrastate or interstate service at the time he received his injury, and therefore whether the State or Federal law applies. Plaintiff contended that he was engaged in interstate service, and offered an instruction to that effect; while defendant contended that plaintiff was engaged by it in intrastate service, and offered an instruction to that effect; both of these instructions were refused and the court submitted to the jury the question whether plaintiff was engaged in one or the other service at the time of the injury.

Plaintiff was employed as a section hand on section No. 17, Sayre being the section foreman. Some few days prior to the accident, this section crew had been at work constructing a side or spur track designed to serve a customer of the railroad, The Domestic Coke Plant, which was located on section 18, and a short distance from where Sayre's section 17 ended. This switch or side track was under the process of construction and had not yet been connected with the main line of defendant company. But when connected the product from The Domestic Coke Plant would be transported in both interstate and intrastate traffic, as defendant's railroad extended into Pennsylvania from Marion county, West Virginia (where the accident occurred), and connected with the Pennsylvania System of Railroads at a point in Pennsylvania. On the morning of the accident the section crew, of which plaintiff was a member, congregated at a place called Radcliff about two and three-quarter miles from the uncompleted switch, and in the early morning started from Radcliff to the uncompleted switch to continue their labors thereon. This crew consisted of five section "hands" or section men, including plaintiff, and the section foreman, Sayre. They started on a hand car propelled by hand levers operated by the men on the car. After traveling from Radcliff about one-half mile, the crew repaired a small piece of the main line track, which work consumed about two hours' time, thence they proceeded on the car to the work on the switch. Plaintiff was helping to propel the car by working the rear right-hand lever and was facing in the direction in which the car was traveling. Two of the other men were in front of him with their backs in the direction in which the car was traveling, and

were at the levers on the front of the car, and the other men were helping at the other levers. As the front men bent down following the lever which they were working, the rear men straightened up. The operation of a lever hand car propelled by the workmen is familiar to every one who has observed. The men in front are in an upright position while the men in the rear are stooping over. They keep bobbing up and down alternatively. After progressing about two miles they came to a tunnel which was one thousand feet from the place of the accident and the track was straight from the tunnel to the point of accident. A short distance before they reached the uncompleted switch at which they were at work, was another switch which ran from the main line to serve another industry called the Brass Plant, and this switch had been left open by the crew of a work train which was serving that plant, and which also was delivering material for the construction of the uncompleted switch at The Domestic Coke Plant a short distance away. The switch was set against traffic which came from the direction of Radcliff, but was open to traffic from the opposite direction. The men on the hand car, including the foreman, did not notice the condition of the switch and were traveling at about twelve miles an hour. It appears that on the day previous in going on the hand car to work on the uncompleted switch, that they had found the switch to the Brass Plant in the same condition, and had stopped their car and thrown the switch so as to let them pass. On this occasion, as just noted, they did not observe the condition of the switch, although the switch signal was red, warning them of its condition. This switch signal could be easily seen for four or five hundred feet before it was reached, on the straight track, and the car could have been stopped, at the rate it was going, in "the distance across the court room." Sayre, the foreman, was standing on the left-hand side of the car facing the direction it was going, but did not observe the red switch signal, saying that he was on the lookout for the work train switch he knew was thereabout. Neither did the plaintiff observe the signal, although he was facing it as he approached, but excuses himself from that

precaution for his own safety by saying that he relied upon
the section foreman, and was busy propelling the car. In
propelling the hand car, the men were required to face in
opposite direction to protect themselves from dangers behind
and before. When the car reached the switch it was thrown
from the track, and plaintiff fell off and injured his hip. The
evidence is in conflict as to the extent of his damages, but
that conflict has nothing to do with whether the service he was
engaged in was intra or interstate, and the jury has settled
this conflict in the evidence as to the amount of damages.
The time of the section men is charged against each partic-
ular job they perform; and at the moment he starts to that
particular job however far it may be from his place of start-
ing, he is paid for the time consumed in reaching it, and the
pay is the same as if he had actually been at work. In other
words the time which an employee spends in getting to a
particular job is paid for as if he was actually on that job.
It is quite clear that when the section crew started from the
repair work near Radcliff that morning, their time began as
if they were working on the uncompleted switch at the Coke
Plant. The fact that they traveled over the main line of the
railroad did not make them engaged in interstate service; but
it appears that in about a half mile from the place of start-
ing, they stopped and did work on the main line, and it is
clear that if an injury had occurred while they were at work
on the main line, the service of plaintiff would have been
interstate in its character. But it is uncontradicted that
when one job is performed wherever it may be, then the time
which the employee uses in going to the other job is charged
to that other job. In this particular case plaintiff was not
given credit for working on the switch on the day of the
accident. His time for which he was paid was allocated to
the actual service which he had performed on the main line.
What service was plaintiff engaged in at the time of the
accident? The evidence being without conflict, makes this
question one of solution by the court and not by the jury.
It is quite generally held that where there is no conflict in
the evidence, the question whether an injured employee is

engaged in intra or interstate service at the time of his injury is one of law and should not be submitted to the jury. Thornton's Fed. Em. Liability Act in section 218 says: "When the facts concerning whether the case comes within the Federal Statute are undisputed, then that question is one for the court; but if disputed then it is one for the jury under the instructions of the court." To the same effect is *Ettison v. So. Ry.*, (S. C.) 96 S. E. 680, where the opinion says: "It has been so well settled, that citation of the cases is unnecessary, that where it appears, as a matter of law, upon the undisputed evidence, that either the state or federal law is the applicable law, it becomes the duty of the court to instruct the jury to apply the one or the other as the case may be." Accord; *Graber v. Duluth etc. Ry. Co.*, (Wis.) 150 N. W. 489; *Moyer v. Pa. R. Co.*, (Pa.) 92 Atl. 282; *Wallace v. N. Y. etc. R. Co.*, (Conn.) 121 Atl. 878, which holds: "Where in an action for death under Federal Employees' Liability Act, the facts were not in dispute, it was the duty of the court to determine whether the decedent was engaged in interstate commerce, and the submission of this issue to the jury was erroneous." (2nd Pt. Syl.), *Erie Ry. Co. v. Welsh*, 89 Ohio St. 81, 87, affirmed in 242 U. S. 303; *Hench v. Pa. Ry. Co.*, 1916 Anno. Cas. 1916-D, p. 230. Where under the evidence any essential matter bearing on the question whether the employee at the time of the injury was engaged is in doubt, it becomes a proper question for the jury under instructions from the court. Roberts Injuries Interstate Employees, p. 119, sec. 51, citing *North Carolina R. Co. v. Zachary*, 232 U. S. 248. In *Smith v. United Fuel Gas Co.*, 91 W. Va. 52, 112 S. E. 205, we said: "Upon an admitted or clearly established state of facts, the question whether an employee's business is interstate or intrastate in character, is generally one of law for determination by the court." The reason of the rule is apparent, for the duties under the State or Federal law vary in the extent of their obligations. Under the common law or state law, the employee assumes the risks ordinarily incident to the employment, and the duties and obligations of the employer are limited by the risks so assumed. Under the state law the doctrine of assumption of risk the fellow-servant

rule, and contributory negligence may be interposed. Under the federal act contributory negligence is no bar; it merely lessens (if the jury sees proper), the amount of recovery. And where the federal act applies it excludes the state law as effectually as if non-existent. Where the facts are undisputed the court should determine whether the state or federal law applies, and instruct the jury under the law applicable, thus simplifying the issue and their findings thereon.

We now come to the question whether, under the evidence and circumstances which are undisputed, plaintiff was engaged in *interstate* or *intrastate* business at the time of the injury. In *Shaffer* v. *Ry. Co.*, 93 W. Va. 300, we held that an employee who had been employed in interstate commerce in rerailing an interstate car and after that work was finished, was injured while returning home on a gasoline motor car, was entitled to recover under the federal law. Although returning from the completion of interstate work, he was regarded as continuing in that work until he reached home. The present case involves the same principle. Plaintiff was going to, instead of returning from, work which was clearly intrastate in its character. In *Otterstedt* v. *Lehigh etc. R. R. Co.*, 193 N. Y. S. 104, the employee, a laborer in a repair and construction gang was fatally injured by his employer's train while on his way to work on a cross-over railroad track which when completed would be used in the interstate business of his employer, and the court held that he was not engaged in interstate commerce at the time of the injury. Many well considered cases hold that an employee whose regular work is of an interstate character is protected by the federal act when on his way to or from that work. *Mathison* v. *Payne*, 98 N. J. L. 87, and numerous other cases collated in annotation to *Mappin* v. *A. T. & S. F. R. Co.*, 49 A. L. R. 1330, under the heading "Travelling about yards, or to and from work, or awaiting orders," on p. 1358. It seems that the same principle would apply where the employee is injured while going to or returning from a work wholly intrastate in character. The fact that the employee does work both of purely intrastate, and at other times purely of interstate character

does not bring him within the federal act for every injury received in the service of an employer engaged in interstate commerce. The character of the service being performed at the time of the injury controls. Thornton's Fed. Em. Liability Act, sec. 56. There is some criticism of this view. *Behrens* v. *Ill. Central R. R. Co.*, 192 Fed. 581.

Had plaintiff's injuries been received while he was at work on the uncompleted sidetrack to which he was going, and which was designed to serve the Domestic Coal Company plant, it would be quite clear that he could not recover under the federal act; for that sidetrack or switch had not become an instrumentality in interstate commerce, although when finished and connected with the main line, it would have become such. *McKee* v. *Elec. Ry. Co.*, 78 W. Va. 131. Under the cases above cited, plaintiff being injured while going to perform work of an intrastate character, he would be deemed to be engaged in that occupation at the time he received the injuries, and his right of recovery should have been submitted to the jury under instructions, embodying the principles of the common law as administered by the state courts.

For the foregoing reasons the judgment will be reversed, the verdict set aside and a new trial ordered.

> *Judgment reversed; verdict set aside;*
> *new trial ordered.*