# CHARLESTON.

TOWNS *v.* MONONGAHELA RY. CO.

(No. 6665)

Submitted April 22, 1930.   Decided May 20, 1930.
(Rehearing Denied July 17, 1930.)

See, also, 105 W. Va. 572, 144 S. E. 289.

*Rollo J. Conley,* for plaintiff in error.
*Victor H. Shaw,* for defendant in error.

MAXWELL, JUDGE:

Plaintiff was working on a section force for defendant, and on the 26th day of October, 1925, as he was proceeding to work

riding on a hand car running in a southerly direction with his foreman, Sayre, and four other workmen, he was thrown from the hand car and severely injured when the car ran into a switch which was closed against traffic proceeding in the direction that the hand car was going. The switch had been left in its then condition—that is, closed against south-bound traffic and open to north-bound traffic—by the crew of a work train which was standing on the main track a few hundred feet south of the switch. All of the men on the hand car, except the foreman, were assisting in propelling it by means of an up and down pump or lever arrangement of the ordinary and familiar type. Plaintiff and two of his companions were facing in the direction of their travel operating the rear lever; two other workmen were operating the front lever—one man facing in each direction. As the men operating one lever bent forward, the men at the other lever straightened up. The foreman was standing on the car by the foot brake, facing in the direction of travel. Neither the foreman nor any of the men in the crew saw the red danger signal at the switch in time to prevent the hand car from being derailed by the closed switch.

When this case was reviewed on the first writ of error, it was held that at the time of plaintiff's injury he was engaged in intrastate traffic; the judgment of the trial court was reversed, the verdict set aside, and a new trial awarded because the trial court had improperly submitted to the jury as a question of fact the legal question of whether the plaintiff was engaged in intrastate or interstate traffic, and in permitting the jury to decide on which basis (federal or state) the liability or nonliability of the defendant should be determined; there being no dispute in the evidence of the facts determinative of the nature of the employment. *Towns* v. *Ry. Co.*, 105 W. Va. 572, 144 S. E. 289. On retrial a verdict was returned and judgment rendered against the defendant for $9,250. The present writ of error followed.

On the day of the accident the crew of the work train was working under orders. A flagman had been sent south to protect it against north-bound traffic. No flagman had been sent north. The explanation of this is that the work train crew knew from their orders and the regular train schedule

that at and around the time of the accident, 9:30 a. m., there was no train due from the north. And it is in evidence that, even if a train had approached from the north, the weight of either a locomotive or a car would have carried it safely through the switch. Under the whole evidence we perceived no negligence on the part of the defendant's servants in permitting the switch to be closed against south-bound traffic.

There was no contributory negligence on the part of the plaintiff. Though he was facing the front, the constant up and down movement of his body as he exerted his strength on the lever to assist in propelling the car, with his hat pulled down over his forehead to resist the breeze caused by the momentum of the car, which was moving at a speed of about twelve miles per hour, his opportunity to observe a danger signal or a closed switch ahead was almost nil. The foreman, unoccupied in propelling the car, was on the lookout. The plaintiff and his associates had a right to rely on the watchfulness of the foreman to protect them from danger. It was the foreman's duty to see the danger signal at the closed switch and to cause the hand car to be stopped in time to prevent accident. Especially is this true in the light of the fact that on the preceding day the foreman stopped the hand car at the same switch, opened the switch for the car to pass through, and then reclosed the switch.

Was the foreman, at the time of his negligent conduct in failing to see the danger signal at the switch in time to avoid the accident, a fellow servant of the plaintiff, or was he a vice principal? If the former, the plaintiff cannot recover; if the latter, he can. Similar questions have perplexed courts since the conception of the fellow servant rule. They are constantly presenting themselves and demanding solution. The most that courts can do is to formulate a general rule or doctrine and test each case by such standard. Our own court has been called upon to decide such questions in numerous instances. The change wrought in this doctrine in the latter part of the nineteenth century is truly reflected in this court's decisions.

In *Criswell* v. *Ry. Co.*, 30 W. Va. 798, 6 S. E. 31, decided in 1888, the plaintiff's intestate, a laborer employed by the de-

fendant, was killed while riding on a hand car to his place of work; the hand car collided with an extra passenger train. The foreman in charge of the hand car had not used the proper caution in ascertaining information that the extra train was to be run, and in not obtaining such information he had violated one of the rules of the company. Syllabus 1 of that case reads: "When a railroad company puts a foreman in charge of a gang of laborers with power to discharge them subject to the approval of the supervisor, and makes it his duty to see that these laborers faithfully perform their duty, such foreman must, in the performance of all his duties to those laborers under him, be regarded as the representative of the railroad company; and if, through his neglect of duty, one of these laborers in the performance of his duty, is injured, he may recover of the railroad company the damages he has sustained, caused by the negligence of such foreman." It can be seen that the test laid down here as to the status of the foreman is one dependent upon rank or grade. Because the foreman had it within his power to discharge laborers under him, he became ipso facto the representative of the defendant and his negligence was therefore that of the defendant.

This doctrine was in conformity with the prevailing doctrine of the time as laid down in the case of *Railroad Company* v. *Ross*, 112 U. S. 377, 5 S. Ct. 184, 28 L. Ed. 787, decided in 1884. In that case, the conductor of a railroad train, upon whom rested the right to command the movements of the train and to control persons employed upon it, was held not to bear the relationship of a fellow servant to the engineer who was injured through the conductor's neglect. As a consequence, the railroad responded in damages at the suit of the engineer. This plainly illustrates the principle that the liability of the defendant rested upon the relationship as to grade of the employees. However, this standard was not long lived, for in 1893 the Supreme Court held in the case of *Railroad Company* v. *Baugh*, 149 U. S. 368, 13 S. Ct. 914, 37 L. Ed. 772, that an engineer who was in control of his fireman, and hence his superior in rank, was not for that reason a vice principal, so that his negligence would fasten liability on the railroad company. There has been an attempt to distinguish the *Baugh* Case from

the *Ross* Case on the facts, but in truth a different doctrine was adopted in the later case, namely, that the liability of a railroad to one of its employees who has been injured through the negligence of a fellow employee is dependent upon the character of the negligent act rather than the rank or grade of the negligent employee.

In conformity therewith, the Supreme. Court held in *Railroad Company* v. *Charless* (1896) 162 U. S. 359, 16 S. Ct. 848, 40 L. Ed. 999, that the negligence of a section boss or foreman in running a hand car at too high a rate of speed while carrying his force of men is not the neglect of any duty which his master is bound to perform, but is that of a fellow servant of the members of his force. This case was followed by a still stronger case, *Martin* v. *Railroad Company* (1897) 166 U. S. 399, 17 S. Ct. 603, 604, 41 L. Ed. 1051, in which Mr. Justice Peckham said: "The counsel for the plaintiff has argued before us that the defendant must be held responsible because the plaintiff had been directed by the foreman, under whose orders he was placed, to look north while he was on the car, and had received the foreman's assurance that he (the foreman) would warn him of the approach of danger, and that, as the foreman failed to do so, it was the failure of the defendant to do something which it was bound as a master to do in furtherance of the obligation it was under to see that the plaintiff had a reasonably safe place in which to perform his work. We do not perceive that the doctrine as to the duty of the master to furnish a safe place for the servant to work in has the slightest application to the facts of this case. There is no intimation in the evidence, nor is any claim made, that the hand car upon which the plaintiff was riding was not properly equipped and in good repair, and in every way fit for the purpose for which it was used. It was a perfectly safe and proper means of transit, in and of itself, from the station at Albuquerque to the point where the plaintiff was going to work. The negligence of the section foreman in failing to note the approaching train, and to give the proper warning, so that the car might be taken from the track, was not the neglect of the defendant in regard to the performance of any duty which, as master, it owed the plaintiff. If the car were rendered unsafe,

it was not by reason of any lack of diligence on the part of the defendant in providing a proper car, but the danger arose simply because a fellow servant of the plaintiff failed to discharge his own duty in watching for the approach of a train from the south.'' Subsequent decisions supporting this case are numerous. See *Dayton Coal & Iron Company* v. *Dodd* (C. C. A.) 188 F. 597, 37 L. R. A. (N. S.) 456; *Railroad Company* v. *Marone* (C. C. A.) 246 F. 916; *Alaska Mining Company* v. *Whelan,* 168 U. S. 88, 18 S. Ct. 40, 42 L. Ed. 390; *R. R. Co.* v. *Bourman,* 212 U. S. 536, 29 S. Ct. 319, 53 L. Ed. 641; *R. R. Co.* v. *Taylor,* 57 App. D. C. 21, 16 F. (2d) 517.

The first case of this nature appearing in our reports after the *Baugh Case,* supra, is *Jackson* v. *Railway Company,* 43 W. Va. 380, 27 S. E. 278, 31 S. E. 258, 46 L. R. A. 337, decided in 1897. In one of his characteristically able opinions JUDGE BRANNON reviewed the history of the fellow servant rule, and came to the conclusion in conformity with the *Baugh Case* that whether a master is liable to one servant for the negligence of another depends upon the character of the negligent act and not upon whether the negligent servant had authority over the one injured. In the *Jackson* Case, a brakeman, in attempting to couple a car, was injured through the negligent act of his conductor in signaling the train to back up. It was held that the brakeman could not recover from the railroad company. That case, conforming as it does with the later federal cases and the generally recognized rule as stated by many state courts and eminent text-writers, settled the law in this jurisdiction.

Concerning the nature of the negligent act and whether it is such as would impute liability to the master, it is held in *Kinder* v. *Coal & Coke Company,* 82 W. Va. 32, 95 S. E. 580, 583: ''If the master delegates to another the performance of nonassignable duties, thus making him a representative of the master, the latter must respond for the results of the negligence of the former.''

The nonassignable duties of a master are usually defined: (1) to use reasonable care to provide safe and suitable machinery and appliances; (2) to exercise reasonable care in providing and retaining sufficient and suitable servants for the business; (3) to establish proper rules and regulations for the

service, and, having adopted such, to conform to them; (4) to use reasonable care to furnish a safe place in which the servant is to work. *Jackson* v. *Railroad, supra; Madden* v. *Railway Co.,* 28 W. Va. 610, 57 Am. Rep. 695.

Under the evidence, has the defendant complied with these four duties? Considering them seriatim, there is nothing in the record to indicate that the defendant failed to provide safe and suitable machinery and appliances. No complaint is made that the hand car was not in good condition, that its brake was unserviceable, or that the rails and roadbed displayed any defects. Furthermore, there is nothing in the record to show that defendant had not exercised reasonable care in providing sufficient and suitable servants. Sayre, the foreman, had been in defendant's service for many years, and no unfavorable inference can be drawn as to his competency. The other men accompanying plaintiff were seasoned railroad workers, as were the crew on the work train some distance away. Concerning the third assignable duty, there is some conflict in the testimony. Plaintiff complained that there were not proper rules and regulations for the service, and particularly so as regards such a situation as the one involved. A reading of the record shows that the defendant provided a book of rules for section foremen. The heading reads: ''The Monongahela Railway Company. Rules for the government of the Operating Department. Effective April 1st, 1924.'' These rules prescribe in a general way the duties of a track foreman, and provided that ''he must run hand cars and trucks with great caution. He must run hand cars and trucks with great caution, always keeping a lookout for extra trains.'' In another section it is likewise provided that ''he must caution his men to exercise great care to avoid injury to themselves and others and will himself take special care under all conditions to guard against injury to the men.'' Admittedly, this book of rules did not specify the details concerning what action a foreman should take when a hand car approached a closed switch, but ''there is, for example, no duty to prescribe rules for the performance of simple and ordinary operations where the nature of the operation or the circumstances of its performance sufficiently indicate the course of conduct which ought

to be pursued.'' 1 Mechem on Agency (2d Ed.) p. 1230; *Voss* v. *R. R. Co.*, 62 N. J. Law, 59, 41 A. 224; *Morgan* v. *Hudson River Co.*, 133 N. Y. 666, 31 N. E. 234; *R. R. Co.* v. *Graham*, 96 Va. 430, 31 S. E. 604. It appears that these rules cautioning the foreman to exercise great care sufficiently cover the operation of hand cars. It would be impossible for the defendant to prescribe the conduct of its foremen under every contingency which might arise. In any situation, something must be left to common sense.

On the other hand, the crew of the work train were working, not only under rules as laid down in a standard book of rules in use by all railroads for that type of train, but; also, they had specific orders as to what they were to do during the day. It cannot be said that they were not fully carrying out such orders in the manner prescribed, and, as above mentioned, the evidence shows that they were guilty of no negligence.

It does not appear, therefore, that there was any lack of proper rules and regulations for the service. Once the defendant has discharged its nonassignable duties, no liability exists against the defendant in favor of an employee for the failure of his fellow servants to perform their duties properly.

Concerning the fourth nonassignable duty, namely, a reasonably safe place in which to work we have hereinbefore shown that the leaving of the switch closed to south-bound traffic was not a negligent omission on the part of the work train crew, nor was the failure to send a flagman to the north. Moreover, the evidence tends to show that the switch signal or target was in good condition and could have been seen approximately one thousand feet away by the foreman had he been looking. Plaintiff relies upon the case of *Shaffer* v. *Railway Company*, 93 W. Va. 300, 116 S. E. 747. That case is readily distinguishable from the case at bar. In the *Shaffer* Case, a reasonably safe place to work was construed by the court with respect to railroads as being the entire track over which the servant is required to pass in the discharge of his duties. There, with the defendant's knowledge, a board had been laid across the track by a merchant at different times for years for the purpose of moving merchandise across the track. The hand car upon which the plaintiff, an employee of the defendant, was riding

to work ran into the board, and was wrecked with the resultant injury to the plaintiff. The company was held liable for the injury. That was a known dangerous obstruction, inherently so. In the case at bar there was no known obstruction.

Thus we see that the nonassignable duties of the master had been complied with. Can it then be said that Sayre, the foreman, was a vice principal? Under the rule of *Jackson* v. *Railroad Company, supra,* and the many other authorities cited, that question must be answered in the negative.

The judgment of the trial court is reversed, the verdict set aside, and a new trial awarded.

*Reversed and remanded.*