C. M. Scott *v.* The Virginian Railway Company

(No. 8309)

Submitted February 25, 1936. Decided March 3, 1936.

*John R. Pendleton,* for plaintiff in error.

*R. L. Carney* and *Bailey & Shannon,* for defendant in error.

KENNA, JUDGE:

C. M. Scott brought this action in the Circuit Court of Wyoming County, and to a judgment based upon a verdict of a jury against it in the sum of $7,500.00, the defendant below prosecutes this writ of error. The action was brought under the Federal Employers' Liability Act, and the assignments of error turn upon the proof.

The plaintiff in error contends (1) that the proof fails to show that it was guilty of actionable negligence; and (2) that in the event the evidence does show actionable negligence, it was the negligence of a fellow-servant, and, inasmuch as the proof shows that the plaintiff was not, at the time of his injury, engaged in interstate transportation nor in work so closely related thereto as to be practically a part thereof, the Federal Employers' Liability Act does not apply and the defendant below has a complete defense under the common law rule that the employer is not liable for an injury due to the negligence of a fellow-servant. These defenses were presented by appropriate instructions on behalf of the defendant, offered and refused in the trial court.

The plaintiff was one of a section gang of five men, which, together with a section foreman, went to a point on the line of defendant's track at or near Iroquois in Wyoming County to load railroad ties from a pile of ties stored at that point, to be taken to a point at or near

Amigo in the same county and there, on the following morning, to be placed in a passing track on defendant's line. It is admitted that this passing track was an instrumentality of interstate transportation. The crew went to the point where they were to load the ties on a railroad motor truck and stopped at a point on the track immediately opposite the tie pile. They were in a hurry to get this particular work done before quitting time. The distance from the nearest track to the pile of ties was sixteen feet. The ties were of an average length of eight and one-half feet, and the proof states their weight at from 125 to 225 pounds each. In placing the ties for use, the instructions were to "line them up" on the north side of the track, and each tie in the stack bore a marking at the end that was considered the better end of the tie to be "lined up." This was called the "line end" of the tie. The ties were not placed in the tie pile uniformly as to the location of these "line ends." However, in order to facilitate the handling of the ties and their placement under the track, it was customary to load them on the truck uniformly in this respect. In order to do this, one of the five men was placed upon the stack of ties. It was his duty to shove them off so that they could be placed on the truck in uniform position as to the "line ends" without turning them after they came off the stack. If the "line end" happened to be in the right direction, the tie was simply shoved off the stack. If it happened to be in the wrong direction, one end of the tie was shoved to the ground and the man on the stack upended the tie so that it would fall to the ground in the correct position to be placed on the truck. As the ties came off the stack, they were loaded onto the truck by the other four men, two men handling each end of the tie. The two men nearest the truck placed the end of the tie they were handling on the truck and the two men at the far end then shoved the tie entirely onto the truck. The plaintiff was one of the two men working at the far end of the tie whose duty it was to shove it onto the truck after the end nearest the truck had been placed thereon. The tie stack was on a pile of "bone" that raised it slightly above the surround-

ing ground. The crew of five men and the foreman was a full-handed crew for the purpose. The plaintiff had, for some time, been a section hand on the railroad and was accustomed to loading ties in this manner.

The two first ties to be loaded on the occasion in question came off the stack with the "line ends" in correct position so that they did not have to be upended. They were safely placed on the truck. A third tie had to be upended before it could be placed on the truck. The man on the stack, before or at the time it was upended, shouted "Watch your sore toes" as a warning and let the tie fall to the ground. This tie was loaded on the truck safely, but as the fourth tie, which also had to be upended to go on the truck properly, was taken off the stack and fell, it struck the plaintiff in the face, injuring him severely. A warning similar to the warning when the third tie fell was given by the man on the stack as the fourth tie was upended, and, as the fourth tie was falling, one or two of the other men in the gang shouted to Scott to look out. To this point, there is no conflict in the evidence.

The conflict in the proof concerns the position of Scott when the man on the stack upended the fourth tie, which struck Scott, and started it on its over-end fall. The testimony for the defendant is to the effect that the man on the stack shouted his warning and then held the tie momentarily to give all of the men a chance to get "in the clear." Thinking that Scott had gotten "in the clear," he let loose of the lie and Scott, on his way back from the truck, negligently stepped into it as it fell. On the other hand, the plaintiff's testimony is to the effect that Scott had barely had time, after assisting in the loading of the third tie, to turn from the truck before the fourth tie fell. Of course, if Scott had remained in a position on or near the track, approximately sixteen feet from the stack of ties, the eight and one-half foot tie would hardly have reached and struck him. The whole things seems to have been very quickly done. As to exactly what the position of Scott was, whether he was given reasonable opportunity to "get in the clear," whether his injury resulted from his own negligence or that of the man on the stack, we can-

not say. The record is not convincingly clear either way. We, therefore, conclude that, under proper instructions, this was a jury question. It was so submitted, and we find no error in this phase of the case. The jury might have inferred that Scott was negligent in not heeding the warnings. His own testimony is to the effect that he did not hear them. On the other hand, the nature of the warning given by the man on the stack, "Watch your toes," or "Watch your bunions," gives room for the inference that the men were expected to "get in the clear" as or after the tie had been upended. Of course, we cannot deal with the conflicting testimony, nor with the conflicting inferences that might be drawn therefrom, on this assignment of error other than to take the theory most favorable to the verdict.

But even though the primary negligence is regarded as a jury question, and even though the jury's finding to the effect that the primary negligence was not that of the plaintiff, but that of the man who was handling the ties on the stack, cannot be disturbed on this writ of error, the plaintiff in error insists that, since the Federal Employers' Liability Act does not apply to this case, and since the primary negligence was that of the plaintiff's fellow-servant, under the common law rule there can be no recovery. The test of whether the Federal Employers' Liability Act, 45 U. S. C. A., secs. 51-59, applies is : " * * * whether the employee at the time of the injury was engaged in interstate transportation or in work so closely related to it as to be practically a part of it." *Chicago & Eastern Illinois Railroad Co.* v. *The Industrial Commission of Illinois,* 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304, 77 A. L. R. 1367. In the exhaustive briefs filed on both sides of this case, we have been referred to many of the hundreds of cases on this question. The cases do not harmonize to the extent of laying down any clear factual test in the application of the general principle stated above. In the case from which that principle is quoted, decided in 1932, the United States Supreme Court held that an employee engaged in hoisting coal into a chute from which coal was supplied to locomotives engaged

principally in the haulage of interstate freight was not within the terms of the act. In doing so, the court expressly reversed itself and overruled its former decisions in the cases of *Erie Railroad Co.* v. *Collins,* 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, and *Erie Railroad Co.* v. *Szary,* 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794. Both cases were decided in 1920. In the former case, the court had held that a signal tower attendant hurt while engaged in operating a gasoline pump, the use of which was to lift water into a tank from which locomotives engaged in the haulage of interstate freight procured their water supply, was within the terms of the act. The opinion in this case contains a careful and full review of the court's former holdings. In the *Szary* case, an employee engaged in drying sand to be placed in bins from which locomotives engaged in the haulage of interstate freight procured their supply, was held to be within the terms of the act. So that, in view of the lack of harmony that exists in the decided cases, and in view of the fact that the United States Supreme Court has so recently changed the trend of its own decisions on the question, we are of the opinion that a lengthy review of the many different holdings would be superfluous in this case.

We think that it is safe to assume that at the time the United States Supreme Court reversed the *Collins* and *Szary* cases, it considered also the soundness of its own prior nearly related cases. One of these, cited and relied upon by the defendant in error, is *Pedersen* v. *Delaware, Lackawana & Western Railroad Co.,* 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914 C, 153. This case was decided at the October Term, 1912, and although Mr. Justice LaMar, Mr. Justice Hughes and Mr. Justice Lurton dissented from the holding of the court, the case still stands as a binding precedent. In that case, the plaintiff was injured while engaged in carrying some bolts from a tool car to a bridge, admittedly an instrumentality of interstate transportation, for use in removing a girder from the bridge and replacing it with a new one. The accident occurred in the afternoon, and the bolts were in-

tended to be used either during the night of the same day or very early the next morning. The workman was held to be within the terms of the Federal Employers' Liability Act, and, in the course of the opinion, the court employed the following language: "It was necessary to the repair of the bridge that the materials be at hand, and the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the roundhouse to the track on which are the cars he is to haul in interstate commerce." The plaintiff in error would distinguish the case of *Pedersen* from the case at bar because, he says, in the *Pedersen* case the repair work upon the instrumentality of interstate transportation had actually been begun, whereas, in the case at bar, no actual work upon defendant's passing track was in progress at the time of plaintiff's injury. It is doubtful whether this would be sufficient to distinguish the cases on any material basis. The relationship of the plaintiff himself to interstate transportation is the vital question to be determined. The question of whether others with whom plaintiff may have been more or less closely associated in his employment were so engaged, although it would certainly bear upon the weight and degree of proof, we think does not enter essentially into the determination of the principal question. The fact that others may or may not have been engaged in working upon the instrumentality of interstate transportation would not seem to be determinative of the status of the instrumentality or that of the plaintiff. But we do not believe that the facts, as stated in the opinion in the *Pedersen* case, bear out the contention of the plaintiff in error. The opinion states that at the time of his injury the plaintiff and a co-employee were engaged in carrying "some bolts or rivets which were to be used by them that night or very early the next morning in 'repairing that bridge,' the repair to consist in taking out an existing girder and inserting a new one." It seems to us that the plain inference from this language is that the repair work on the bridge was not actually under way, but was to begin that

night or very early the following morning. There seems to be nothing to the contrary stated in the opinion.

The case of *Towns* v. *Railroad Company*, 105 W. Va. 572, 144 S. E. 289, is cited and relied upon by the plaintiff in error. In that case, it was held that the provisions of the Federal Employers' Liability Act were not applicable to a workman who was injured by the derailment of a handcar operated on defendant's main line that ran into an open switch or siding when the injured employee and other members of a section gang were going to their work, located upon another siding, or spur track, which was under construction, but which had not been connected with the defendant's main line. The case holds that where the controlling facts are established without contradiction, the question of whether the Federal Employers' Liability Act is applicable is one of law for the court. Undoubtedly this is true, but no prejudice would seem to result from submitting the question to a jury, however erroneous such a submission may be, if the jury determines it correctly. The discussion of legal questions contained in the case is undoubtedly sound, but owing to the marked dissimilarity of the facts upon which the case turned to the facts in the case before us, we are of the opinion that it has no controlling application.

We are of the opinion that the case of *Pedersen* v. *Delaware, Lackawana & Western Railroad Co., supra,* was decided upon facts essentially analogous to the facts before us, and that it constitutes a binding precedent for the decision of this case. We believe that the plaintiff here, within the meaning of that holding, was engaged in an occupation so closely related to interstate transportation as to be virtually a part of it.

Having disposed of the assignments of error favorably to the contention of the defendant in error, it follows that the judgment of the Circuit Court of Wyoming County must be affirmed.

*Affirmed.*